STATE OF DELAWARE v. ETHEL MOORE, ET AL.

(*December* 17, 1946.)

RICHARDS, C. J., and CAREY, J., sitting.

*Vincent Theisen,* Chief Deputy Attorney-General, for the State.

*Alexander Jamison* for the defendant, Ethel Moore.

Court of General Sessions for New Castle County, No. 83, September Term, 1946.

CAREY, J., delivering the opinion of the Court:

As will be seen from the foregoing statement of facts, there is serious disagreement as to whether or not this defendant voluntarily returned to Delaware with the Police Officers. The immediate legal question before us is whether this Court should permit her to prove that she was brought here involuntarily. In other words, when a defendant is be-

fore this Court charged with a crime, will this Court inquire into the circumstances of her arrest? In passing upon this legal question, we will assume that her statements are true and that she was in effect kidnapped and brought back to Delaware.

In 16 *C. J.* 175, the following statement appears:

"As a general rule the jurisdiction of the court in which an information or indictment is found is not impaired by the manner in which accused is brought before it; and therefore, by the weight of authority, the fact that accused has been illegally arrested, or that he has by trickery, force, fraud, or without legal authority, or by any illegal means, been brought within the territorial jurisdiction of a State or Federal court, does not oust the jurisdiction of that Court, or constitute a deprivation of life, liberty or property without due process of law, if he is legally in custody in the state or of the United States. Even if in any case there should be a conflict of jurisdiction between two courts, defendant, who is before one court for trial, cannot take advantage of the fact that his presence has been illegally or improperly obtained.

"As a rule, although a fugitive from justice has been captured and brought from a foreign country or another state without authority of law, the court which thus obtains jurisdiction will not investigate the manner of his capture." See also, 22 *C. J. S., Criminal Law,* § 146, p. 242.

The annotation in 18 *A. L. R.* 509 indicates that the big majority of states follows the principle above laid down in criminal cases. Indeed, we do not interpret the brief of the defendant's attorney as denying this statement to be the law as a general rule. However, he does contend that nearly all of the cases cited by the text writers in support of this principle are instances where the defendant has been a

fugitive from the state in the sense that he was within the state when the crime was committed but left prior to his arrest. He argues that a distinction should be made between the case of such a fugitive and the case of one who is not a fugitive. With commendable diligence, he has analyzed numerous cases involving this point but cites no examples where any court has drawn such a distinction. In fact, he points out only two instances in which courts of last resort have refused to follow the general principle above set forth, to wit, those of Nebraska and Kansas.

The Nebraska case cited by defendant's counsel is In re Robinson, 29 Neb. 135, 45 N. W. 267, 8 L. R. A. 398, 36 Am. St. Rep. 378 decided in March, 1890. The crime involved there was horse stealing. It thus appears that the defendant was a fugitive. In deciding the matter, the Court compared this particular transaction to the case where a fugitive from justice has been extradited and is sought to be held upon a charge other than the one for which he was extradited. In the latter event, the Court said, he could not be prosecuted on the second offense until he had been given an opportunity to return to the asylum state.

In connection with the reasoning of the Nebraska court, it is of some interest to observe that the analogy drawn was later shown to be false in the case of In re Petry, 47 Neb. 126, 66 N. W. 308, decided in February, 1896, where the same Court held that a person extradited on one offense could be tried for another offense without having been given the opportunity to return to the asylum state. In re Petry was, of course, decided some time after the Federal Supreme Court case of Lascelles v. Georgia, 148 U. S. 537, 13 S. Ct. 687, 37 L. Ed. 549. In fact, in the Petry case, the Court itself cast some doubt upon the correctness of its former decision of In re Robinson.

The Kansas case cited by the defendant's attorney is *State v. Simmons*, 39 *Kan.* 262, 18 *P.* 177. Here the defendants were charged with contempt for ignoring subpoenas as witnesses for the prosecution in another criminal action. Here again, the defendants were fugitives in that they were present in Kansas when the crime was committed but later went to Nebraska. There they were seized and brought back by Kansas officers without extradition. In discharging the defendants, the Court pointed out that such a seizure is unlawful and held that public policy should not tolerate or recognize breaches of the peace committed by its own officers in a sister state. A somewhat similar thought was expressed in the Robinson case, *supra*. In neither of the cases is it suggested that there is any distinction in the rule as applied to a fugitive or a non-fugitive. Our own examination of the authorities has brought to light no case where such a distinction has actually been drawn.

The Kansas case of *State v. Wellman*, 102 *Kan.* 503, 170 *P.* 1052, 1054, *L. R. A.* 1918D, 949, *Ann. Cas.* 1918D, 1006, we think, greatly weakens the force of *State v. Simmons*, *supra*, without overruling it. In the Wellman case the defendant was not a fugitive but was surrendered to Kansas by the Governor of Missouri under extradition proceedings. The Court held: "Where a nonresident of the state has broken its criminal laws, its right to punish him ought not to be dependent on the regularity of the proceedings by which he was surrendered to its officials." The Court therefore refused to consider whether or not the surrender of the defendant by the Missouri authorities was proper, citing as precedent *In Re Moyer*, 12 *Idaho* 250, 85 *P.* 897, 12 *L. R. A.* (*N. S.*) 227, 118 *Am. St. Rep.* 214, affirmed in *Moyer v. Nichols*, 203 *U. S.* 221, 222, 27 *S. Ct.* 121, 51 *L. Ed.* 160.

We come now to a consideration of the line of reasoning given by the Nebraska and Kansas courts. It must be

remembered that we are dealing with a criminal action brought by the State and not a civil action brought by an individual. In the present instance, no person stands to profit by the prosecution of the action. On the other hand, assuming the guilt of the defendants, the quashing of the indictment would serve to deprive the people of this State of the privilege of punishing a transgressor. Any line of reasoning by which such a result is reached seems to us devious and far fetched. A restatement of the proposition tends to demonstrate its unsoundness. The argument, fairly paraphrased, is briefly this: public policy demands that a criminal should go free because another person committed another crime in another state by the manner in which he brought the first criminal before the Court. The argument must be rejected. As was said in *State v. Ross,* 21 *Iowa* 467, "There is no fair analogy between civil and criminal cases in this respect. In the one (civil) the party invoking the aid of the Court is guilty of fraud or violence in bringing the defendant or his property within the jurisdiction of the Court. In the other (criminal) the people, the State, is guilty of no wrong."

We are of the opinion that the correct principle is the one which has been adopted by the English Courts, the vast majority of American Courts and the almost unanimous opinion of text writers. *Mahon v. Justice,* 127 *U. S.* 700, 8 *S. Ct.* 1204, 32 *L. Ed.* 283; *People v. Pratt,* 78 *Cal.* 345, 20 *P.* 731; *State v. Ross, supra; People v. Rowe,* 4 *Parker Cr. R.,* *N. Y.* 253; *Matthews v. State,* 19 *Okl. Cr.* 153, 198 *P.* 112; *Dows' Case,* 18 *Pa.* 37; *Brooken v. State,* 26 *Tex. App.* 121, 9 *S. W.* 735; *Ex parte Scott,* 9 *Barn. & C.* 446, 109 *Eng. Rep.* 166; 14 *Am. Jur.* 919; 1 *Wharton's Criminal Procedure* 95 (10th Ed.); *Hughes Criminal Law and Procedure* 603; 22 *C. J. S., Criminal Law,* § 146, p. 242.

In following that majority rule in this case, it will be

observed that we draw no distinction between a fugitive and a non-fugitive. In our opinion, no sound reason exists for such a distinction, nor do we find any recognized authority to support it.

It may be suggested that the rule herein followed can lead to great injustice in some instances. However, it is our belief that the criminal responsibility and civil liability imposed by federal and state laws will usually have the practical effect of preventing the kind of acts herein alleged. The rule which we are now following goes no further than to say that this Court, in a criminal action, will not inquire into the method by which the defendant is brought before it. Proper tribunals and adequate laws exist for determining the responsibility and liability of those who, in mistaken zeal, may wilfully or ignorantly exceed their authority in making arrests.

It is our conclusion that, even assuming the truth of this defendant's affidavit, the motion to quash must be denied.