**243 A.2d 733.**
JEROME R. WALKER *vs.* HAROLD V. LANGLOIS, *Warden.*

JULY 2, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. On December 15, 1967, the petitioner, Jerome R. Walker, filed *pro se* a "Motion To Vacate Sentence," seeking thereby to test the legality of his confinement under a July 3, 1967 order of the superior court revoking his probation and committing him to the adult correctional institutions there to serve a three-year suspended sentence previously imposed. We ignored Walker's failure to resort to ordinary appellate processes,[1] we treated the motion as a petition for a writ of habeas corpus, and, on January 9, 1968, we ordered the writ to issue. 103 R. I. 764, 236 A.2d 446. The case was then assigned for hearing on oral argument to April 3, 1968. When Walker appeared in court on that day without counsel, we advised him of his right to be represented by an attorney, and explained to him the benefits to be gained therefrom. Thereupon, pursuant to his re-

---

[1]In *Escoe* v. *Zerbst,* 295 U. S. 490, 55 S. Ct. 818, 79 L. Ed. 1566, the supreme court addressing itself to the procedural problem of how to obtain appellate review of a revocation of probation said at 494, 55 S. Ct. at 820, 79 L.Ed. at 1569: "When a hearing is allowed but there is error in conducting it or in limiting its scope, the remedy is by appeal. When an opportunity to be heard is denied altogether, the ensuing mandate of the court is void, and the prisoner confined thereunder may have recourse to *habeas corpus* to put an end to the restraint."

quest, we directed the attorney, who had represented him at the revocation hearing in the superior court, to act on his behalf, and we continued the case to May 8, 1968, in order to allow ample time for the preparation of a brief.

The only substantial issue is the extent of the rights of an accused at a hearing for the revocation of a suspended sentence and probation.

On April 7, 1965, Walker, on a plea of guilty to a charge of unlawfully possessing a hypodermic needle and syringe, was sentenced by a justice of the superior court to serve a term of three years at the adult correctional institutions. Execution of the sentence, however, was suspended[2] for a probationary period of five years upon the condition, inter alia, that he not violate during his probation any criminal law of the United States, of this or of any other state, or of any municipality in this state. That condition was one of several incorporated in a printed document which Walker executed. Coincident with the suspended sentence, he was sentenced to a term of two years on an indictment charging unlawful possession of a narcotic drug. He was committed on the two-year sentence and served until released on December 31, 1966.

Following his release all apparently went well with Walker until February and March of the following year. Then, according to the information disclosed at the revoca-

[2]The statutory authority for a suspension of sentence and probation is G. L. 1956, §12-19-8, which reads:

"Whenever any defendant shall appear for sentence before the superior court, the court may impose a sentence and suspend the execution thereof. The suspension of the execution of such sentence shall place the defendant on probation for such time and on such terms and conditions as the court may fix.

"The period of probation may be for a shorter or longer period than the time of the sentence imposed, but in no event shall such probation exceed the longest period for which the defendant might be sentenced upon conviction."

tion hearing in the superior court, a series of significant events occurred which led to his present confinement.

Those events were described at the revocation hearing by Cass, a federal treasury department narcotics agent, as well as by Walker. The former testified that Walker had twice sold him what he represented to be heroin. The first sale was made late in February, but what he understood would be and what had been sold as heroin was in fact a white non-narcotic powder; the second sale was on March 9, 1967. At that time Cass, upon payment of $40 to Walker, received two semi-transparent glassine envelopes, each of which contained a small amount (80-90 milligrams) of white powder which, when "field tested" shortly after delivery, proved to contain heroin. The results of that test, although not conclusive, were later confirmed after analysis of the powder by a government chemist. Although the chemist did not testify and was not available for cross-examination, his report, over objection, was admitted into evidence and marked as an exhibit.

While Walker denied selling any heroin, he agreed that he sold Cass some "bad stuff" which he identified as the contents of a thorazine capsule. His explanation for passing off thorazine as heroin was that Cass "kept bothering" him with requests to purchase narcotics in order to take care of two girls he, Cass, had "hooked on drugs." By selling him the "bad stuff" Walker said that he figured "I would make him mad enough to leave me alone."

In any event, the sales to Cass led to the filing of a federal complaint against Walker on March 30, 1967, in which he was charged with knowingly and unlawfully selling two bags of a narcotic drug, to wit, heroin. On May 19, 1967, he was indicted by a grand jury in the United States Dis-

trict Court for the District of Rhode Island,[3] and on June 2, 1967, he pleaded not guilty to that indictment. Later that day, he was arrested by a Providence police officer on a capias and brought before the superior court where he was held without bail pending the receipt of a probation department report[4] concerning his conduct.

In due course the probation report was received, and, after some delays, the causes of which are without significance to this decision, the revocation hearing began on June 21. At the conclusion of that day's hearing Walker's request for a continuance, so that he might secure the attendance of witnesses, was granted, and the case was not again heard until July 3, 1967 when it was concluded. The justice presiding found Cass' testimony "credible and convincing" and on that evidence, as well as on Walker's own testimony, concluded that the state had satisfied its burden of proving a violation of a condition of the suspended sentence. Accordingly, the suspension was removed, and Walker was committed on the sentence previously imposed.

Neither the brief filed by Walker *pro se* nor that filed by his counsel clearly reveals the basis for the claim that revocation of his suspended sentence was illegal and the resultant confinement therefore unlawful. They cite various decisions including several of the United States Supreme Court which relate generally to due process requirements and specifically to an accused's constitutional entitlement

---

[3]His original plea of "not guilty" to that indictment was withdrawn on July 21, 1967, and changed to "guilty" whereupon he was sentenced to a term of five years to commence upon the completion of the term he was then serving in this state. Thereafter, on April 1, 1968 his motion to vacate the federal sentence and to reinstate his plea of "not guilty" was granted and the indictment is presently pending in the federal court.

[4]G. L. 1956, §12-19-9, provides in relevant part that the court before which a probationer charged with a violation is brought "* * * may request the probation department to render a report relative to the conduct of said defendant, and, pending receipt of such report, may order the defendant held without bail for a period not exceeding ten (10) days."

to counsel at the "critical stage" of a criminal proceeding. Included among them as *Mempa* v. *Rhay*, 389 U. S. 128, 88 S. Ct. 254, 19 L. Ed.2d 336, decided only several months ago, where proceedings for the revocation of probation or of a deferred sentence were determined to be a "critical stage." Notwithstanding his reliance on the right-to-counsel cases,[5] he admits that he had counsel at the revocation hearing, and he then concludes his argument on this point with a non sequitur saying that " * * * he wishes this court to impose more safeguards at such a hearing, and as to the procedure before such a hearing, in accordance with the emphasis placed there by the United States Supreme Court." What safeguards or what emphasis he wants in addition to those he received, he does not tell us. Neither does he suggest that he was denied any essential rights or basic protections.

The generality, as well as the vagueness and inconclusiveness, of his argument is attributable perhaps to the absence of any real basis for complaint. The probationary sentence he received was, after all, a matter of grace. It rested entirely within the discretion of the sentencing justice whether to execute or to suspend the three-year sentence. That it was suspended and Walker placed on probation in no way reflected on his guilt, but indicated only a concern of the sentencing justice that he be provided with an opportunity to rehabilitate himself without confinement so that society might thereby be protected from his potential for misconduct.

The suspension of the execution of his sentence and the probation he received were not, however, unqualified. They were instead specifically subject to Walker's compliance with certain conditions. The contemplation was that his

---

[5]*Gideon* v. *Wainwright*, 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed.2d 799; *Townsend* v. *Burke*, 334 U. S. 736, 68 S. Ct. 1252, 92 L. Ed. 1690; *Moore* v. *State of Michigan*, 355 U. S. 155, 78 S. Ct. 191, 2 L. Ed. 2d 167.

compliance would legally entitle him to freedom during the probationary period; likewise, it was contemplated that a violation of the conditions might result in a revocation of the suspension and of his being required to serve the three-year term.  The choice was Walker's — to observe or not to observe all of the conditions, including the one which required that he demean himself properly according to law. When it was ascertained that he had been indicted on a federal narcotics charge, action as provided by statute[6] was taken and Walker was brought before the superior court for a determination of whether or not the restrictions imposed had been breached.

Walker does not suggest that he lacked proper notice of the revocation hearing which then followed.  Nor is there any question that he was present and represented by counsel throughout; that he was afforded a full and complete opportunity to hear and to controvert the evidence against him; and that he offered evidence in his own defense.

Walker had, then, both notice and representation by counsel.  In addition he offered evidence in his own behalf, and he heard and cross-examined the only witness who testified against him.  Clearly on our statute and on the present state of the authorities, he was entitled to no greater protections.  Whether either the constitution or fundamental fairness and fair play entitled him as of right to the

---

[6]The controlling statute is §12-19-9 which in pertinent part then read: "Whenever any person, who shall have been placed on probation by virtue of the suspension of execution of his sentence, as aforesaid, shall violate the terms and conditions of his probation as fixed by the court, the police or the probation authority shall inform the attorney-general of such violation, and said attorney-general shall cause the defendant to appear before the court. * * * After receiving the report or statement of facts from the police and the probation department or from the probation authority alone, in open court, in the presence of the defendant, the court may remove the suspension and order the defendant committed on the sentence previously imposed, or may continue the suspension, as to said court may seem just and proper."

protection afforded is an open question. In *Harris* v. *Langlois*, 98 R. I. 387, 202 A.2d 288, we said that notice of an alleged breach of a condition of suspension and a hearing before revocation are privileges conferred by statute; that they are not rights guaranteed under the constitution. We relied on the often cited *Escoe* v. *Zerbst*, 295 U. S. 490, 493, 55 S. Ct. 818, 820, 79 L. Ed. 1566, 1569, where Mr. Justice Cardozo with customary acuity and cogency wrote:

> " * * * Clearly the end and aim of an appearance before the court must be to enable an accused probationer to explain away the accusation. The charge against him may have been inspired by rumor or mistake or even downright malice. He shall have a chance to say his say before the word of his pursuers is received to his undoing. This does not mean that he may insist upon a trial in any strict or formal sense. * * * It does mean that there shall be an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused by the failure of the inquisitor to carry the probe deeper."

Taking the lead from Mr. Justice Cardozo's statement, we then went on to say that §12-19-9 requires "no more and no less." In this state, we held, a probationer's rights on a hearing for a revocation of a suspended sentence and probation are limited to the opportunity to be heard in open court personally and by counsel; they do not include as part of his just due either that he be confronted by the witnesses against him as in a criminal trial, or that the information developed at the hearing conform to the established rules of evidence. Whether the thrust of *Mempa* v. *Rhay, supra*, the recommendations of the texts,[7] and the proposals

---

[7]Kadish, *The Advocate and the Expert—Counsel in the Peno-Correctional Process*, 45 Minn. L. Rev. 803, 825-41 (1961); Kadish, *Legal Norm and Discretion In The Police and Sentencing Processes*, 75 Harv. L. Rev. 904, 915-29 (1962); Note—*Legal Aspects of Probation Revocation*, 59 Colum. L. Rev. 311 (1959).

.of the American Law Institute[8] require that we go further than we did in *Harris* v. *Langlois, supra,* and give to a probationer at a revocation hearing all the protections which Walker received, we do not now decide. It is sufficient for this case that he received them. A decision as to an accused's entitlement thereto is better left to a case when that issue is directly before us.

More, however, is involved than the extent of the protections he received at the revocation hearing. There is also the further question of whether the facts and information brought out at that hearing justified the order revoking the suspension of sentence and committing him to serve the sentence previously imposed. Before referring to the factual matter, we make clear what rules of evidence controlled in the presentation of the facts and information at the hearing and what degree of proof was required in order to establish a violation. As to the former, there was no limitation restricting the justice presiding to a consideration of only such facts and information as would have been admissible under the strict rules of evidence, including the rule against hearsay, applicable at a criminal trial, *Almeida* v. *Langlois,* 97 R. I. 325, 197 A.2d 498, *Knowles* v. *Langlois,* 90 R. I. 445, 159 A.2d 616, *Powers* v. *Langlois,* 90 R. I. 45, 153 A.2d 535; as to the latter, the standard was factual material which would reasonably satisfy that there had been a violation, and proof thereof beyond a reasonable doubt was not a prerequisite, *Harris* v. *Langlois, supra; Broccoli* v. *Kindelan,* 80 R. I. 436, 98 A.2d 67. And, finally, on review, our concern is limited to whether the trial justice act-

---

[8] A. L. I. *Model Penal Code,* §301.4, reads:

"The Court shall not revoke a suspension or probation or increase the requirements imposed thereby on the defendant except after a hearing upon written notice to the defendant of the grounds on which such action is proposed. The defendant shall have the right to hear and controvert the evidence against him, to offer evidence in his defense and to be represented by counsel."

ed arbitrarily or capriciously. *Harris* v. *Langlois, supra; Broccoli* v. *Kindelan, supra.*

Here, the facts and information which became known at the hearing were that Walker was not only a confessed user of narcotics, but also an admitted vendor of thorazine who, according to his own testimony, falsely represented that what he was selling was heroin. Apart from the several criminal offenses, both federal and state, which may be found in those acts, there is also Cass' testimony, in part supported by hearsay, that Walker had, in fact, sold heroin. Although Walker denied that sale, Cass' story was accepted as "credible and convincing." On such a record, we cannot say that the justice presiding at the hearing acted capriciously or arbitrarily, or that her decision was not based upon evidence which she was entitled to receive and consider and which reasonably satisfied her that there had been a violation of the probationary conditions.

It is unnecessary to consider at length Walker's further challenge in which he calls our attention to his apprehension on superior court capiases of March 31, 1967, and April 28, 1967, and to his subsequent release from arrest without first being brought before the superior court. He argues that for the arresting officers, rather than the court, thus to have released him not only violated the requirements of §12-13-2,[9] but in addition constituted such an abuse of process and such a denial of due process as to have defeated the superior court's jurisdiction to revoke his suspended sentence. The general rule, however, is that the jurisdiction of the criminal court depended, not on how Walker came before it, but on whether he was before it on a proper charge. *Frisbie* v. *Collins,* 342 U. S. 519, 72 S. Ct. 509, 96

---

[9]Section 12-13-2 provides generally that the person apprehended under a capias issued by a court before which an indictment or complaint is pending, shall be brought before such a court or confined until he shall give appropriate recognizance.

L. Ed. 541; *Jetter* v. *Maxwell*, 176 Ohio St. 219, 198 N.E.2d 668; *State* v. *Moore*, 43 Del. 509, 50 A.2d 791; *People* v. *Griffith*, 130 Colo. 475, 276 P.2d 559; *Smith* v. *State*, 237 Ind. 244, 143 N.E.2d 408. That being the rule, even on the assumption that the capiases of March and April were illegal, or that, if legal, the subsequent releases were improper, neither that illegality nor that impropriety taints his subsequent apprehension under the admittedly legal capias of May 25, 1967 or the revocation hearings of June and July 1967 which followed.

The other arguments advanced by Walker are so completely lacking either in relevance or merit that they are summarily rejected.

The petition for habeas corpus is denied and dismissed, the writ heretofore issued is quashed, the papers certified to this court are ordered returned to the superior court, and the petitioner is remanded to the custody of the respondent in accordance with the superior court's order of commitment.

*Norman E. D'Andrea,* for petitioner.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, for respondent.