268 A.2d 720.

ROBERT M. O'NEILL *vs.* JOHN F. SHARKEY, *Acting Warden Adult Correctional Institutions.*

AUGUST 14, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. On February 2, 1970, the above-named Robert M. O'Neill made application to this court for a writ of habeas corpus, seeking to vacate a three-year sentence imposed by a Superior Court justice on his finding that O'Neill had violated the terms of a deferred sentence agreement. The application, being made on oath, averred, *inter alia*, that at the hearing wherein sentence was imposed, O'Neill was denied the minimum fact finding process, and in particular was deprived of the benefit of effective representation by counsel as mandated by *Mempa* v. *Rhay*, 389 U. S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336. We ordered the respondent to show cause, if any he had, why the writ should not issue and his answer not denying applicant's averments relative to the *Mempa* standards, the application for the writ was granted and the cause assigned to the May calendar for a hearing. *O'Neill* v. *Sharkey*, 107 R. I. 906, 263 A.2d 704.

It appears from the record that on April 9, 1964, O'Neill was arraigned in the Superior Court on two indictments for harboring a murderer. He pleaded *nolo contendere* to each indictment, was sentenced to 18 months on one, and

sentence was deferred on the other. (No. 32691) The record further discloses that O'Neill was released from the Adult Correctional Institutions on December 8, 1964, at which time the terms of his deferred sentence agreement commenced to run. *Almeida* v. *Langlois,* 97 R. I. 325, 197 A.2d 498.

Within the five-year period provided for in his deferred sentence agreement, specifically on August 18, 1969, O'Neill was arrested for allegedly breaking and entering in the night-time with intent to commit larceny. He was arraigned on that charge in the then District Court of the Sixth Judicial District on the following day and pleaded not guilty. He was admitted to bail and the case continued to September 4, 1969, for hearing. O'Neill appeared on that date and was advised that a hearing on the complaint would be scheduled for some undetermined day in the future. He objected on the ground that the court lacked jurisdiction to continue the case for more than 14 days without his consent, relying on G. L. 1956, §12-10-9.[1]

In his oral argument and brief, O'Neill makes much of the fact that the complaint had not been heard at the time he was found to be in violation of his deferred sentence agreement. To the end that this contention may be foreclosed to any future protest that this facet of the instant cause was not considered by us, we hold that *Brady* v. *Langlois,* 104 R. I. 301, 243 A.2d 906, is dispositive of the question in that the alleged offense remained cognizable by the grand jury.

Meanwhile, on August 25, 1969, the Attorney General sought and obtained a capias from the Superior Court for

---

[1]"Adjournment of trial or examination.—Any district court may adjourn any trial or examination pending before it, from time to time, not exceeding fourteen (14) days at any one (1) time, except with the consent or at the request of the accused, and to the same or to a different place in the same district."

the purpose of having O'Neill arraigned as a deferred sentence violator. It is not disputed that the Attorney General was motivated by O'Neill's conduct on August 18, 1969. O'Neill appeared in the Superior Court on the day the capias was issued and was released on bail until September 22, 1969, to which date the Attorney General's motion was assigned for hearing. On this latter date, O'Neill appeared in the Superior Court; his bail was revoked and a hearing on the Attorney General's motion was further assigned to September 25, 1969. On that date a hearing was held, but on what scale we are unaware because no transcript of that hearing was ordered. It is elementary that one who relies on alleged improprieties occurring at a hearing in a subordinate forum has the obligation to supply this court with a record of the proceedings of which he complains. No such record having been supplied in the instant cause, we would ordinarily not fault the hearing at which O'Neill now argues denied him an opportunity to question the witnesses produced against him, and to be heard in his own defense. However, he insists under oath that he was not provided with realistic representation by counsel and this allegation is not denied by respondent. Specifically, O'Neill swears that it was not until a few minutes before the September 25, 1969 hearing that a member of the Public Defender's staff was assigned to represent him and there was no time for meaningful conferring. Pursuaded that the transcript of the hearing, if available, would shed no light on this allegation, we apply the rule that sworn statements in petitions for extraordinary writs that are not denied, are assumed by us to be true. *Morin* v. *Zoning Board of Review,* 102 R. I. 457, 232 A.2d 393; *Kent* v. *Zoning Board of Review,* 102 R. I. 258, 229 A.2d 769; *Roberts* v. *Board of Elections,* 85 R. I. 203, 129 A.2d 330.

In *Mempa* v. *Rhay, supra,* filed November 13, 1967, the

United States Supreme Court held that the time of sentencing is a critical stage in a criminal case which entitles the accused to the right of substantial assistance of counsel as guaranteed by article VI of amendments to the Constitution of the United States, and made applicable to the states by virtue of the due process clause of article XIV of amendments.

Further, in *Twiford* v. *Peyton*, 372 F.2d 670 (4th Cir. 1967), it was held that appointment of counsel one day prior to trial deprived the accused of meaningful assistance of counsel and was inherently prejudicial.

Consequently, on the fact taken to be true by us that O'Neill was denied meaningful assistance of counsel, we hold that the three-year sentence be vacated and a new hearing be held in the Superior Court at which O'Neill will have realistic assistance of counsel.

So doing, we turn to a consideration of a further contention made by O'Neill, namely that when, as here, the offense alleged to be a violation of the deferred sentence agreement is totally dissimilar to the offense on which sentence was deferred, the violation hearing should be of such a nature as to give the accused all of the due process protection which would be afforded in a trial on the merits of the alleged offense. In support thereof, he refers our attention to *Walker* v. *Langlois*, 104 R. I. 274, 243 A.2d 733, wherein, he argues, this court indicated that we would leave the full due process contention to an appropriate case. So contending, he misconceives the question deferred in the *Walker* case.

In *Walker*, it was contended that the thrust of *Mempa*, was to give an accused probation violator not only the right to be represented by counsel, but in addition, the right to notice of the alleged misconduct; the right to be heard in his own defense, and the right to cross-examine witnesses who appeared against him. Stating that wheth-

er all these rights were mandated by *Mempa*, was an open question, we declined to consider that question, deferring it to an appropriate case, for the reason that Walker had been afforded all of the rights for which he was contending.

We agree with O'Neill that there has now been presented for our consideration what constitutes minimum protection for an accused probation violator at a hearing conducted pursuant to the state's contention that the accused is in fact in violation of the terms of his probation. We do not agree, however, that such minimum protection goes to the extent of according the accused all of the due process guarantees inherent in a strict or formal trial.

In *Walker*, we quoted at length from *Escoe* v. *Zerbst*, 295 U. S. 490, 55 S.Ct. 818, 79 L.Ed. 1566, wherein the late Mr. Justice Cardozo stated, in essence, that while such a hearing did not call for a trial in a strict or formal sense, it did call for the accused to have an opportunity to explain away that for aught the court might know was prosecution turned persecution through rumor, mistake or downright malice.

We hold, therefore, that at the hearing subsequently to be held in the Superior Court pursuant to our decision herein, O'Neill shall have the benefit of representation by counsel appointed sufficiently in advance of said hearing to make that representation meaningful; to be heard in his own defense, and to cross-examine such witnesses as may be produced against him. So holding, we do not mean to imply that the evidence against or on behalf of O'Neill shall be subject to the strict rules of evidence, nor that the state's burden of proof is one of beyond all reasonable doubt. In short, we hold that O'Neill is entitled to that type of hearing afforded in *Walker*.

Consequently, we remand the cause to the Superior Court for such a hearing and hold moreover that every hearing

530

for an alleged violation of probation held hereafter shall conform to the standards afforded to Walker and affirmed in these proceedings.

Before concluding, however, it is necessary to dispose of a further contention made by O'Neill, namely, that he pleaded nolo contendere without fully understanding the nature of his plea. This plea, entered in ignorance of its meaning, he argues, falls short of knowingly and intelligently waiving his constitutional rights to a trial by jury and appeal. On this point, it suffices to observe that his long record of brushes with the law in other states as well as here, his pleas of nolo to offenses on which sentences were imposed and served, as well as sentences served for violation of probation entered in connection with nolo pleas, render his contention of ignorance simply unbelievable. See *Flint* v. *Sharkey*, 107 R. I. 530, 268 A.2d 714.

The application for habeas corpus is granted, and the cause is remanded to the Superior Court for further proceedings consistent with this opinion.

*Edwin H. Hastings,* for petitioner.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for respondent.