285 A.2d 381.
JOSEPH A. CHAREST, JR. *vs.* FRANCIS A. HOWARD, *Warden.*

JANUARY 6, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. This petition for a writ of habeas corpus is predicated on the petitioner's contention that his incarceration in the Adult Correctional Institutions is unlawful for the reason that the order of his commitment is violative of due process.

It appears from the averment of his sworn petition that on October 17, 1969, petitioner pleaded nolo to an indictment charging him with receiving stolen goods and was sentenced to a term of five years. The execution of said sentence was suspended, however, and petitioner was placed on probation for a period of five years.

It further appears that on December 21, 1969, petitioner was arrested by the North Kingstown police but was not

charged with any crime. On January 22, 1970, however, he was charged by the Jamestown police with 12 counts of breaking and entering. The complaint and warrant issued out of the District Court, Second Division, Newport, Rhode Island. A capias issued out of the Superior Court for Washington County and on January 27, 1970, petitioner was arraigned in said Superior Court as a suspended sentence violator. He was held without bail and the case was continued to February 5, 1970. On this latter date, the case was further continued to March 5, 1970, and petitioner was released on personal recognizance. On March 5, the case was further continued to March 30, 1970. These continuances, petitioner avers, were made to await disposition of the charges in the Newport District Court.

It further appears that on said March 30, 1970, the charges pending against petitioner in the Newport District Court were dismissed. The same day, petitioner appeared in the Superior Court for Washington County and was adjudged to be in violation of the suspended sentence. A mittimus issued and petitioner was turned over to respondent to commence serving his five-year sentence.

The petition then avers that the revocation of his suspended sentence was without a hearing of any kind, and for this reason petitioner's restraint by respondent is unlawful in that the revocation of his suspended sentence constitutes a denial of due process.

In accordance with our practice, petitioner accompanied his petition with a memorandum of law. It cites *O'Neill* v. *Sharkey*, 107 R. I. 524, 268 A.2d 720 (1970); *Walker* v. *Langlois*, 104 R. I. 274, 243 A.2d 733 (1968) and *Flint* v. *Sharkey*, 107 R. I. 530, 268 A.2d 714 (1970), *reargument*

*denied* October 20, 1970, as authorities for the proposition that his revocation without a hearing violates due process.[1]

The petitioner did not accompany his petition with a transcript of the March 30, 1970 revocation proceedings. This failure would ordinarily be fatal to a consideration of his petition since it was his burden to establish that the revocation proceedings fell short of the meaningful hearing to which he was entitled. *LaRoche* v. *Langlois,* 102 R. I. 582, 232 A.2d 365 (1967).

Nevertheless, out of an abundance of caution for petitioner's rights, and because we concluded that the petition should be further explored,[2] we ordered respondent to show cause why the writ should not issue. *Charest* v. *Howard,* 108 R. I. 902, 271 A.2d 471 (1970).

In his sworn answer to the show cause order, respondent admitted that petitioner was in his custody but denied that such custody was unlawful. Rather, he alleged that petitioner's suspended sentence was revoked after a hearing. In the memorandum of law accompanying his answer, respondent stressed our holding in *O'Neill* v. *Sharkey, su-*

---

[1]Revocation of the instant petitioner's suspended sentence occurred on March 30, 1970. *O'Neill* v. *Sharkey,* 107 R. I. 524, 268 A.2d 720 (1970) was filed August 14, 1970, more than four months after petitioner here was found to be in violation. We specifically held in *O'Neill* that the due process standards established by that case would apply prospectively only. Consequently, *O'Neill* is unavailing to instant petitioner.

*Flint* v. *Sharkey,* 107 R. I. 530, 268 A.2d 714 (1970) dealt with vacating a guilty plea and is inapposite here.

*Walker* v. *Langlois,* 104 R. I. 274, 243 A.2d 733 (1968) however, is in point and will be considered and discussed *infra.*

[2]On the same day that the instant petition was considered, we also had before us the petition of Edward G. Plante for a writ of habeas corpus, which petition was captioned *State* v. *Plante.* This latter petition also challenged the legal adequacy of a revocation hearing, but was concerned with a deferred sentence as distinguished from a suspended sentence. Deeming it advisable to explore the question of whether a valid distinction existed, we also issued a show cause order in connection with Plante's petition. *State* v. *Plante,* 108 R. I. 903, 271 A.2d 631 (1970).

*pra,* that the standards therein adopted would have no retrospective application and that as to revocation hearings held prior to *O'Neill,* our holding in *Walker* v. *Langlois, supra,* would be controlling.

Continuing with his answer, respondent stated, that subsequent to the March 30, 1970 revocation, petitioner filed a petition for habeas corpus in the Superior Court. This petition, he further advised us, except for the allegation that the March 30, 1970 revocation was without a hearing, was identical with the instant petition.

The respondent's answer further alleged that the petition addressed to the Superior Court had been heard on July 8, 1970, and denied.

The petitioner, replying to respondent's answer again claimed that the March 30, 1970 revocation proceedings amounted to a hearing insufficient in law to justify the revocation.

On this state of the pleadings and having in mind the heretofore undecided question of whether a distinction should be made as to what constitutes a valid revocation hearing in suspended sentences vis-à-vis deferred sentences, we granted the petition and ordered the writ to issue. *Charest* v. *Howard,* 108 R. I. 910, 273 A.2d 325 (1971).[3]

The writ issued on February 11, 1971, and some two months later, namely April 21, petitioner filed with this court a certified copy of the transcript of the March 30, 1970 revocation proceedings, together with a certified copy of the July 8, 1970 hearing on his habeas corpus petition to the Superior Court.

Before turning to a consideration of the matters therein

---

[3]This order in addition to issuing the writ, directed that the case be consolidated for oral argument with *Plante* whose petition was also granted. *State* v. *Plante,* 108 R. I. 910, 273 A.2d 327 (1971).

contained, we deem it timely to question the appropriateness of employing the writ of habeas corpus as a vehicle for review in this court of revocation proceedings in the Superior Court. We do so fully cognizant of the fact that we have on occasions heretofore condoned such practice. *Harris* v. *Langlois,* 98 R. I. 387, 202 A.2d 288 (1964); *Walker* v. *Langlois, supra, O'Neill* v. *Sharkey, supra,* are cases in point. However, had we denied petitioners in those cases a review through recourse to a prerogative writ, review would have been foreclosed, since the time for prosecuting bills of exceptions had passed. Such is the situation in the case at bar.

Rule 21(a) of the rules of this court specifically provides:

> "Decisions, rulings and orders of the superior court upon any criminal matter subsequent to judgment may be excepted to and may be made the subject of a bill of exceptions in the same manner, as near as may be, as decisions, rulings and orders prior to judgment."

We now think it readily apparent that the interest of one whose probation has been revoked in the Superior or Family Courts, where records of the proceedings are kept, as well as more orderly procedure in this court, will be better served if the allegedly aggrieved probationer prosecutes a bill of exceptions from the decision of the revoking justice rather than invoking habeas corpus, a writ of error, or certiorari.

Consequently, we hold that as to all such hearings, and indeed any post-conviction proceedings in which the defendant claims there is error, held after the filing of this opinion, the exclusive vehicle for review thereof in this court, except for circumstances so unique or peculiar as to justify the exercise of our discretion, will be by way of a bill of exceptions.

This brings us to a consideration of the merits of petitioner's contentions. These are that in the revocation proceedings of March 30, 1970, petitioner did not receive the

hearing to which he was entitled and that, even if he had, the decision of the revoking justice is arbitrary and capricious.

As heretofore noted the minimum standards protection decreed by this court in *O'Neill* v. *Sharkey, supra,* did not govern the March 30, 1970 proceedings. Rather, it was our holding in *Harris* v. *Langlois, supra,* as re-enunciated in *Walker* v. *Langlois, supra,* that controlled. It is the essence of these cases that an alleged violator of probation is entitled to no more than that which is provided by statute.[4]

Additionally, we pointed out that the evidence upon which probation may be revoked may consist of hearsay. Nor is it required that such evidence establish violation beyond a reasonable doubt.

It is sufficient if this court in reviewing the decision of the revoking justice cannot say that his decision was such an abuse of discretion as to be arbitrary or capricious. *Walker* v. *Langlois, supra.*

Having in mind then the protection to which petitioner was entitled, we look to the transcript of the March 30, 1970 revocation proceedings. It discloses that petitioner

---

[4]The applicable statute here is G. L. 1956 (1969 Reenactment) §12-19-9 which is as follows:

"Whenever any person, who shall have been placed on probation as aforesaid shall violate the terms and conditions of his probation as fixed by the court, the police or the probation authority shall inform the attorney general of such violation, and said attorney general shall cause the defendant to appear before the court. The court may request the probation department to render a report relative to the conduct of said defendant, and, pending receipt of such report, may order the defendant held without bail for a period not exceeding ten (10) days. After receiving the report or statement of facts from the police and the probation department, or from the probation authority alone, in open court, in the presence of the defendant, the court may remove the suspension and order the defendant committed on the sentence previously imposed, or impose a sentence if one has not been previously imposed, or may continue the suspension of a sentence previously imposed, as to said court may seem just and proper."

appeared with counsel. The Superior Court justice made it abundantly clear that his consideration of whether petitioner was in violation of the terms of his probation was based on the contents of a pre-sentence report, prepared after the Superior Court capias had issued and on an inquiry made by said justice of the clerk of the District Court, Second Division, in which the breaking and entering charges had been brought and dismissed.

Counsel for petitioner was permitted to argue at length, and petitioner was personally given every opportunity to have his say. *See Escoe* v. *Zerbst,* 295 U. S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935).[5]

We think it clear then that the March 30, 1970 revocation proceedings afforded to petitioner that degree of procedural due process to which he was entitled, and his contention that he was denied a valid hearing is without merit.

This brings us to a consideration of his contention that, even assuming that the hearing was correct in manner and form, the decision of the Superior Court justice must be faulted as being arbitrary and capricious.

The pre-sentence report upon which the Superior Court justice reached his decision discloses the following. At approximately 1 a.m. on December 21, 1969, the North Kingstown police officers observed a motor vehicle occupied by two males. They stopped the car for a routine check and asked petitioner, who was the operator, for his

---

[5]It was a holding in that case on which *Harris* v. *Langlois, supra,* turned and *Walker* v. *Langlois, supra,* followed. Later, in *Mempa* v. *Rhay,* 389 U. S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), the United States Supreme Court decided that a revocation hearing is a critical stage of a criminal proceeding, entitling the probationer to representation by counsel under the sixth amendment.

Other than this determination, however, the Court did not enlarge on the holding in *Escoe* v. *Zerbst,* 295 U. S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935). *See Murray* v. *Page,* 429 F.2d 1359 (10th Cir. 1970).

In the case at bar petitioner was represented by informed counsel who vigorously pleaded every aspect of petitioner's cause.

license and registration. The petitioner replied that he had never had a license and the officer directed that the car be driven to the North Kingstown police station.

The other occupant of the car was petitioner's brother and he drove the car to the station. There petitioner's brother consented to a search of the car which, admittedly, belonged to petitioner. In the trunk were found three bags which contained, among other items, a large quantity of silverware.

The petitioner and his brother were not detained at this time, but subsequent inquiries by the North Kingstown police brought to light the fact that the silverware could be identified as that which had been stolen in a number of housebreaks in the town of Jamestown. It was from this discovery that the Jamestown police brought charges in the Newport District Court.

The transcript of the March 30, 1970 hearing discloses that additionally the Superior Court justice, following up the information that the Jamestown charges had been dropped, learned from the clerk of the Newport District Court that the charges had been dismissed because, under *State* v. *Brown*, the District Court justice felt bound to grant petitioner's motion to suppress the evidence of the stolen items.[6]

In any event, the trial justice considered all of this information, none of which petitioner disputed, in light of a specific provision on which petitioner's probation was conditioned. This was that petitioner would not engage in any antisocial conduct which would furnish cause for the

---

[6]The revoking justice's reference is to *State* v. *Brown*, 106 R. I. 453, 260 A.2d 716, decided January 14, 1970, wherein we held that where the owner of a searched motor vehicle was in police custody for some thirty minutes prior thereto, the police search of his car was an unreasonable search.

court to believe the probation order should be revoked in the public interest.

It was the trial justice's conclusion that in view of all the known circumstances, petitioner was not in compliance with the conditions of his probation. Such conclusion cannot be said by us to have been arbitrarily or capriciously determined.

There is moreover additional reason for us to conclude that petitioner has not satisfied his burden of establishing that the incarceration resulting from the revocation of his suspended sentence is unlawful. It is to be found in the transcript of the July 8, 1970 hearing on his habeas corpus petition to the Superior Court.[7]

At that hearing, held pursuant to petitioner's averment that the revocation of his suspended sentence was invalid and his resulting incarceration illegal, petitioner was represented by the public defender. Testimony was received from both petitioner and his brother attempting to explain how on December 20, 1969, petitioner had loaned his car to his brother. While thus in possession of petitioner's

---

[7]That petition, as well as the instant petition, invoked the original and concurrent jurisdiction conferred on the Supreme and Superior Courts by G. L. 1956 (1969 Reenactment) §10-9-3. When under that section the Superior Court has heard and denied a petition for the writ, the decision of the Superior Court justice is final and no appeal lies to this court. *Lee* v. *Gough,* 84 R. I. 358, 124 A.2d 549 (1956). Such denial, however, does not preclude the petitioner from filing a petition in this court on the same set of facts. General Laws 1956 (1969 Reenactment) §10-9-22.

Consequently, when such has been the travel of a cause, as is the case here, we examine the record of the proceedings in the Superior Court only for the purpose of passing on the merits of the petition filed in this court, and not for the purpose of determining whether the Superior Court justice's decision was clearly wrong as would be the case on appeal. In other words, we confine our examination of the proceedings in the Superior Court to a consideration of what was established by those proceedings.

We adopted this procedure as a practical solution to the disadvantage of this court where an evidentiary hearing is involved. *Lonardo* v. *Langlois,* 98 R. I. 493, 205 A.2d 19 (1964).

car, brother George, according to petitioner and George, purchased the silverware from an unknown sailor, not knowing that it was stolen. Further, it was George who, unknown to petitioner, put the silverware in the trunk of petitioner's car. Further, as their story went, when stopped by the North Kingstown police at 1 a.m. the following morning, petitioner had no knowledge that there was anything in the trunk of his car other than some old tools. However, notwithstanding this alleged innocent state of affairs, it is petitioner's testimony when asked by the North Kingstown police for permission to open the trunk of the car, petitioner refused. As heretofore noted, it was on permission given by brother George that the police examined the trunk of petitioner's car.

The foregoing merely capsules the fairly extensive testimony of petitioner and his brother. It serves, however, to indicate that not even the naive, unduly taxing their credulity, would conclude that petitioner's conduct was consistent with the terms of his probation.

It is our judgment, therefore, that the March 30, 1970 hearing cannot be procedurally faulted, nor the decision of the revoking justice be said to be an abuse of his discretion. *Broccoli* v. *Kindelan,* 80 R. I. 436, 98 A.2d 67 (1952), *cert. denied,* 348 U. S. 879, 75 S.Ct. 120, 99 L.Ed. 692.

The petition for habeas corpus is denied and the writ heretofore issued is quashed.

*James Cardono,* Public Defender, *John P. Toscano, Jr.,* Asst. Public Defender, for petitioner.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for respondent.