287 A.2d 749.

GERALD M. TILLINGHAST *vs.* FRANCIS A. HOWARD, *Warden.*

FEBRUARY 28, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. This is a petition for a writ of habeas corpus brought by an inmate of the Adult Correctional Institutions of which the respondent is warden.

The petitioner avers that on September 12, 1969, he pleaded nolo contendere to an indictment charging him with assault with a dangerous weapon. On October 8, 1969, he was sentenced to two years but the execution of said sentence was suspended and petitioner placed on probation as authorized by G. L. 1956 (1969 Reenactment) §12-19-8.

The petitioner further avers that he was presented to the Superior Court on May 18, 1970, and after a hearing by a justice of that court, was adjudged to be in violation of his probation, wherefore he was ordered to start serving the two year sentence previously imposed. With regard to that hearing, however, he averred that the Superior Court justice's decision was arbitrary in that it was not supported

by any evidence from which it could be found that he had violated the terms of his probation.

The petition was filed pro se on February 15, 1971, and out of an abundance of concern for petitioner's rights, we, on February 23, 1971, directed respondent to show cause, if any, why the writ should not issue. *Tillinghast* v. *Howard*, 108 R. I. 916, 273 A.2d 675 (1971).

In his sworn show cause answer, respondent admitted that petitioner was in his custody; that such custody resulted from the issuance of a mittimus as averred by petitioner, but denied that the decision of the Superior Court justice, which resulted in the issuance of said mittimus, was arbitrary.

Both petitioner and respondent submitted memoranda of law. That of petitioner was filed with his petition while respondent's accompanied the show cause answer.

In his memorandum, petitioner relied on *Harris* v. *Langlois*, 98 R. I. 387, 202 A.2d 288 (1964), *cert. denied,* 379 U. S. 866, 85 S.Ct. 138, 13 L.Ed.2d 70, wherein this court stated *inter alia* that the underlying reasons for a revocation hearing is to determine whether the charge against the probationer might have been inspired by rumor or mistake, or even downright malice. He attributed controlling significance to that language because of his contention that an examination of the evidence adduced at his hearing would show that he was the victim of malice and mistake.

Replying, respondent's memoranda pointed out that petitioner had failed to support his averments by furnishing this court with a transcript of the hearing. He referred our attention to *LaRoche* v. *Langlois,* 102 R. I. 582, 232 A.2d 365 (1967), wherein this court held that it was petitioner's burden to prove the averments of his petition. Moreover, citing *deMello* v. *Langlois,* 94 R. I. 497, 182 A.2d 116 (1962) and 39 Am. Jur.2d §28, at 198, respondent's memoranda challenged the appropriateness of habeas corpus as a vehicle for review of the revocation hearing.

Shortly after filing his answer and memorandum, respondent also filed a motion to dismiss the petition, together with an additional memorandum, which motion directed our attention to the authorities cited in his memoranda for the proposition that habeas corpus did not lie. In addition to the authorities thus referred to, respondent, in his motion to dismiss, directed our attention to *Walker* v. *Langlois*, 104 R. I. 274, 243 A.2d 733 (1968), n. 1, which states:

" 'When a hearing is allowed but there is error in conducting it or in limiting its scope, the remedy is by appeal. When an opportunity to be heard is denied altogether, the ensuing mandate of the court is void, and the prisoner confined thereunder may have recourse to *habeas corpus* to put an end to the restraint.' "

An examination of *deMello* v. *Langlois, supra,* proved that case to be inapposite here. However, it being petitioner's position that he had a hearing but that error inhered therein, we concluded that along with *Charest* v. *Howard,* 108 R. I. 910, 273 A.2d 325 (1971), and *State* v. *Plante,* 108 R. I. 910, 273 A.2d 327 (1971), the petition should be heard on oral arguments and briefs. Consequently, on May 13, 1971, we ordered the writ to issue and directed the parties to discuss in their oral arguments and briefs, in addition to the other questions presented, the question of whether an application for a writ of habeas corpus or a bill of exceptions, is the proper procedure. *Tillinghast* v. *Howard,* 108 R. I. 929, 277 A.2d 137 (1971).[1]

As heretofore noted, the petition had been filed pro se. So, in the interest of petitioner, and as assistance to this

---

[1]The instant cause was argued on November 1, 1971. Prior thereto, however, specifically on October 4, 1971, oral arguments were heard on the petitions of Joseph A. Charest and Edward G. Plante. On consideration of the oral arguments and briefs presented therein, we concluded that review of revocation hearings held after the filing of our opinions in those cases would be by bills of exceptions and not habeas corpus. *Charest* v. *Howard,* 109 R. I. 360, 285 A.2d 381 (1972), and *State v. Plante,* 109 R. I. 371, 285 A.2d 395 (1972).

court, in addition to that which could be counted upon from the Attorney General representing respondent, we appointed Samuel A. Olevson, Esquire, to orally argue and brief the questions presented. *Tillinghast* v. *Howard,* 108 R. I. 937, 278 A.2d 867 (1971).

Prior to the hearing on oral arguments and briefs, and in keeping with his burden, petitioner supplemented the papers in the case with a transcript of the revocation hearing held on May 18 and 19, 1970. An examination of that transcript is of course indispensable to these proceedings. Before doing so, however, we deem it desirable to set forth some of the principles against which the revocation hearing, as revealed by said transcript, must be tested. Commencing with the obvious, it is to be noted that suspending the execution of sentence, as well as deferring sentencing, are judicial functions which do not come up for consideration until all questions of guilt have been resolved against the accused. This is to say that when such function is exercised, it comes at a moment when the accused could be sentenced to the maximum penalty provided for the offense of which the accused stands convicted.

Moreover, they are functions to which the convicted accused has no recourse as a matter of right. Rather, they are acts of grace, *Escoe* v. *Zerbst,* 295 U. S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935); *Walker* v. *Langlois, supra, Harris* v. *Langlois, supra,* whereby the convicted accused retains his liberty, conditioned however on such probationary terms as the court may impose.

Indeed, it is for the purpose of giving a convicted accused the opportunity of rehabilitation that he retains his liberty and is placed on probation. *Shaw* v. *Henderson,* 303 F.Supp. 183 (1969), *Powers* v. *Langlois,* 90 R. I. 45, 153 A.2d 535 (1959). When, however, there exists reason to believe that one at liberty on probation has not complied with the terms of that probation, it is within the discretion of the court

502

to impose sentence and order that it be served if the proba-
tioner is on a deferred sentence, or vacate the suspension
of execution of a sentence previously imposed. *Powers* v.
*Langlois, supra* and *Walker* v. *Langlois, supra.*

This is not to say though that probation may be revoked
arbitrarily or capriciously. *Broccoli* v. *Kindelan,* 80 R. I.
436, 98 A.2d 67 (1952). There must be a hearing at which
petitioner is entitled to be represented by counsel, present
witnesses, and question his accusers. *O'Neill* v. *Sharkey,* 107
R. I. 524, 268 A.2d 720 (1970).[2]

But he is not entitled to the rejection of evidence on the
grounds that it is hearsay as would be the case at trial.
*Walker* v. *Langlois, supra.* Neither is he entitled to have
the accusation that he is in violation of the terms of his
probation, established beyond a reasonable doubt. *United
States* v. *Chambers,* 429 F.2d 410 (3d Cir. 1970). It suffices
if from the factual material, even though hearsay, it is rea-
sonable to believe that the probationer has failed to comply
with any of the terms of his probation. *Broccoli* v. *Kinde-
lan, supra.* In short, if such factual material is marshalled
against him, it is up to the probationer to explain it away
or run the risk of having his probation revoked. *Escoe* v.
*Zerbst, supra,* and *Harris* v. *Langlois, supra.*

It is in light of these settled principles then that we re-
view the revocation hearing of which petitioner here com-
plains. So doing, we look to the transcript thereof for the
purpose of determining whether the revocation of probation
was arbitrary.

The transcript establishes that at or about five p.m. on
April 29, 1970, one Scott Prescott went to the Providence
police station to complain that he had been robbed by pe-

---

[2] *O'Neill* was expressly made prospective in application and, having been
filed subsequent to the instant hearing, it was not available to the instant
petitioner. He, however, received the minimum procedural due process
accorded in *O'Neill* and we only cite it here as representing the now
prevailing rule.

titioner, about a half-hour earlier. The incident, according to Prescott's statement to the police, took place on Weybosset Street where Prescott was seated in a Volkswagen bus belonging to one Harold Brooks.

Prescott told the police that petitioner, leaning into the bus, held a gun to Prescott's head and said "Let's take a ride." Just before this, petitioner had asked Prescott if he had any money and when Prescott answered in the negative, petitioner had said "If I find any on you, you are dead."

Frightened by the gun, Prescott gave petitioner $75 which the latter stated he could have back if later that night Prescott supplied petitioner with "five ounces of grass."

Continuing with his statement to the police, Prescott related how petitioner suggested meeting at 9 o'clock that night at the corner of Elmwood Avenue and Burnett Street in Providence. Asked by the police if he were willing, Prescott agreed to be at the stated intersection and assist the police in a "stake out." Prescott also agreed to return to the station at 8 o'clock that evening for instructions.

The transcript establishes that Prescott, accompanied on this occasion by Brooks, returned to the station at 8 o'clock as agreed, and left with Brooks and four police officers to go to the rendezvous.

When they arrived at the stated intersection, Prescott and Brooks sat in the latter's parked Volkswagen bus while the four officers took up places whence they could keep the Volkswagen under surveillance.

The petitioner, accompanied by another man, arrived on time and when petitioner opened the Volkswagen door, the police moved in. They placed petitioner under arrest and frisked him for weapons. He had none as such, but did have a small pair of blunt children's cut-out scissors in his right hand. He was taken to the police station and held.

The following morning, April 30, 1970, Prescott and Brooks went to the police station where Prescott signed and

swore to a statement of the foregoing events. Brooks, however, refused to give a sworn statement, saying that for some of the period that Prescott and petitioner were talking on Weybosset Street the previous afternoon, Brooks was away from his bus. The robbery, if it occurred, must have happened during this period, according to Brooks. Thus, Brooks refused either to corroborate or contradict Prescott's story.

At the revocation hearing, the Attorney General called to the stand Prescott, a police officer known to petitioner who saw the latter standing at the Volkswagen, talking to a stranger, the police officer to whom Prescott first complained, and another officer and a civilian stenographer who had typed Prescott's statement and taken his oath as a notary public.

Prescott admitted that he made the complaint in question but surprised the state by testifying that it was all a lie. He stated that he did this because at the time he believed that petitioner was out to get him and he decided to get petitioner first.

Later, however, he further testified, he learned that "it was all a big thing made up." He added "I made a mistake doing it, the whole thing."

At the close of the questioning of the civilian stenographer, Prescott's signed sworn statement was received in evidence as a full exhibit. It sets forth that to which the police officers who questioned Prescott testified.

The petitioner called Harold Lee Brooks. As to whether petitioner had robbed Prescott, Brooks stuck to the story that he had told the police, namely that he was away from the scene for a while but no robbery occurred while he was present. He did testify that Prescott had told him on the evening of April 29th that the whole story was a lie. However, on cross-examination, he was asked why he had not spoken out to the police that evening or the following morn-

ing. He found the going somewhat sticky and after several evasions stated, "I figured I wasn't the one that went in there to tell that this happened in the first place, so I wasn't going to put my nose into it and say it didn't happen. So if it did happen, that would put me on the spot. I figured I would do this, and stay out of it that way."

· The transcript further establishes that petitioner offered no evidence other than the testimony of Brooks. When the state advised the court that it had nothing further to offer, petitioner's counsel stated that he rested with petitioner's consent. He then argued petitioner's cause. On the completion of his argument, the Superior Court justice reviewed the factual material before him and made clear that he completely rejected Prescott's testimony that the story to the police was a lie. Rather, he stated that he was satisfied that the story given by Prescott to the police, and later signed and sworn to in a question and answer statement was the truth as to what happened on April 29th.

In justification of this belief, he stated:

> "I believe that that is true, first, because of the spontaneity of Prescott's coming to the police immediately following the incident. I believe in it, because he followed through with the rendezvous at nine o'clock, which was suggested by a police officer. And I believe it is true, because he followed through the following day with his sworn statement at the police station. That statement coincides with his original statement."[3]

In discrediting Prescott's testimony that he lied to the police, the Superior Court justice expressed the opinion that Prescott's second thoughts between the time of his complaint to the police and his testimony at the revocation

---

· [3]The Superior Court justice did not point out, but we do, that petitioner arrived at the time and place that Prescott had stated he would; a confirmation of Prescott's original story to which petitioner offered no explanation.

hearing, somebody had gotten to Prescott. He acknowledged, however, that there was no direct evidence of this.

In any event, when the Superior Court justice concluded his review of the evidence offered by the state, it became apparent to petitioner and his counsel that probation would be revoked. Faced with this, petitioner's counsel asked if petitioner might be heard. When the Superior Court justice agreed however, petitioner declined, stating, in essence, that because the Superior Court justice was prejudiced, no useful purpose would be served.

All parties having been fully heard, the Superior Court justice revoked petitioner's probation and ordered him delivered to respondent to start serving the two-year sentence previously imposed.

In his oral argument and brief, the learned counsel appointed by us to argue petitioner's cause made two contentions. These are that the revoking of petitioner's probation was arbitrary in that there was no evidence of his having broken any of the terms of his probation, and that habeas corpus is the appropriate remedy for review. We will treat with these contentions in the reverse order in which they were made.

At the outset, it must be conceded that this court has in the past treated a petition for a writ of habeas corpus as an appropriate vehicle for appellate review of a revocation hearing, and we will not fault the instant petition because of a procedural recourse that we have heretofore tacitly approved.

However, in the interest of a more orderly and expeditious posturing of a review of a revoked probationer's claim of error, we decided in *Charest* v. *Howard, supra* and *State* v. *Plante,* 109 R. I. 371, 285 A.2d 395 (1972), that as to all revocation hearings held after that date, review in

this court would be by a bill of exceptions pursuant to Rule 21(a) of the Rules of the Supreme Court.[4]

We affirm our holding in *Charest* v. *Howard, supra* and *State* v. *Plante, supra,* but for obvious reasons, do not apply the procedural rule therein adopted to the instant petition.

This brings us then to a consideration of petitioner's contention that the decision of the Superior Court justice was arbitrary in that there was no evidence to support it. It is readily apparent from a review of the transcript and the state's exhibit which consisted of Prescott's sworn statement to the police that there is overwhelming evidence, albeit hearsay which, if believed, establishes that petitioner was not in compliance with the terms of his probation.

Even so, petitioner contends that while hearsay evidence may be received, an examination of the cases so holding, including those decided in this jurisdiction, discloses that there has never been a revocation based entirely upon hearsay as to disputed facts. In support thereof he cites four cases from this jurisdiction.[5]

There are, of course, many other cases involving hearsay in which this court has refused to hold that the decision of the revoking justice was arbitrary. Whether they would support petitioner's contention, however, we do not inquire for the reason that assuming the hearsay in those cases was in conflict with the probationers' explanations therein,

---

[4]In thus making Rule 21(a) applicable to revocation hearings, we assume an actual hearing was held and that appellant is alleging that the decision to revoke was arbitrary or that he was denied the minimum due process mandated by *O'Neill* v. *Sharkey,* 107 R. I. 524, 268 A.2d 720 (1970).

If, however, the complaint is that there was no hearing whatsoever. application for a writ of habeas corpus will still be proper. *See Walker* v. *Langlois,* 104 R. I. 274, 243 A.2d 733, n. 1.

[5]The cases cited are: *Harris* v. *Langlois,* 98 R. I. 387, 202 A.2d 288 (1964); *Almeida* v. *Langlois,* 97 R. I. 325, 197 A.2d 498 (1964); *Broccoli* v. *Kindelan,* 80 R. I. 436, 93 A.2d 67 (1952) and *Roderick for Writ of Habeas Corpus,* 45 R. I. 153 (1923).

here, petitioner elected not to personally contradict the story that Prescott related to the police.

Rather, he relied on the Superior Court justice accepting Prescott's testimony that his story to the police had been a lie and on the testimony of Brooks. As heretofore narrated, the trial justice pointed out why Prescott's testimony was not worthy of belief, thus leaving his sworn statement uncontradicted unless a contradiction can be found in the testimony of Brooks. He, however, offered no testimony which contradicts said statement. Instead, he attempted to lend veracity to Prescott's testimony by testifying that the latter had told him that the story to the police was a lie. Brooks' efforts in this regard, however, were so marked by confusion, contradictions and evasions, as to cast a cloud on Prescott's testimony as well as his own.

Nevertheless, petitioner urges that the trial justice's decision was certainly arbitrary in finding that someone had frightened Prescott into changing his story as well as frightening Brooks to testify as he did, when, as the Superior Court justice acknowledges, there was no evidence to support such a finding.

In advancing this contention petitioner substitutes the Superior Court justice's impression of why Prescott would admit having made, but wished to retract, his sworn statement to the police for the Superior Court justice's actual findings. He found as a fact that the sworn statement contained the truth. In stating his impression as to why Prescott would now repudiate his previous sworn statement, the Superior Court justice may or may not have indulged in speculations, but even if he did, such speculation in nowise impairs the ultimate findings on which his decision to revoke was predicated.

It is our judgment, therefore, that from an independent examination of the factual material on which this Superior

Court justice rested his decision, we cannot say that his decision was arbitrary or capricious.

The petition for habeas corpus is denied, and the writ heretofore issued is quashed.

*Samuel A. Olevson, Amicus Curiae,* for petitioner.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for respondent.