STATE *vs.* RAPHAEL WAX.

STATE *vs.* RAYMOND EDWARD WINFREE.

JULY 26, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

320

CONDON, J. These criminal complaints were heard together in the district court of the tenth judicial district on each defendant's motions to quash and to dismiss the complaints. At the conclusion of such hearing the district judge deemed the questions raised by said motions of such doubt and importance and so affecting the merits of the controversy that they ought to be determined by this court before further proceedings were had in the district court. Hence, in accordance with general laws 1938, chapter 545, §6, as amended by public laws 1940, chap. 941, sec. 2, he entered an order certifying six specific questions of law for our determination.

It appears from the record of each case accompanying the order of certification that defendant Wax was charged with the unlawful possession of lottery tickets in violation of G. L. 1938, chap. 612, §36, and that defendant Winfree was charged with engaging in pool selling, bookmaking, and registering bets in violation of G. L. 1938, chap. 612, §35. They were arrested in the city of Pawtucket on June 3, 1950 at 3:45 p.m. by a member of the state police and were taken to the state police barracks in the town of Lincoln. While

they were detained there defendants were denied the opportunity to obtain a special arraignment so that they might be admitted to bail. This was due to a policy adopted by the state police of holding overnight in jail a person arrested for a "bookie" offense, unless a physician examined the prisoner at the barracks and thereafter made an affidavit that he should not be so held.

After defendants had remained in jail overnight they were taken to Pawtucket the next morning, June 4, 1950, and arraigned in the district court of the tenth judicial district at 10 a.m. on complaints and warrants duly issued by such court on that day. They had been detained under arrest without a warrant in Lincoln in the eleventh judicial district approximately eighteen hours.

The defendants by their motions to quash and their motions to dismiss the complaints have attacked the validity of their arrests and the lawfulness of their detention beyond the territorial limits of the tenth judicial district. The numerous questions of law raised by such motions, however, have been reduced to six in the order of certification. In the absence of any question being raised as to the necessity and propriety of such certification in the circumstances, we shall consider those questions in each case in their numerical order.

The first question is as follows:

"1. Is the arrest and detention of the defendant illegal in view of the fact that said defendant was arrested at 3:45 P. M. on June 3, 1950 in the City of Pawtucket, within the jurisdiction of the Tenth District Court, and was thereupon transported and held in the State Police barracks in the Town of Lincoln, in the jurisdiction of the Eleventh District Court, until about 10:00 A. M. on June 4, 1950, at which time the said defendant was then taken by members of the State Police before the Justice of the Tenth District Court?"

The defendants contend that their arrests were illegal because the member of the state police who arrested them

in the tenth judicial district lost his authority to detain them when he forcibly took them from said district into the eleventh judicial district. They claim that he thus became a trespasser *ab initio* rendering illegal the original arrests. In support of such contention they rely principally on *Page v. Staples,* 13 R. I. 306. That case is not in point. There a deputy sheriff of Providence county on his way to jail in the city of Providence took his prisoner through Kent county. This court held that in so doing he lost his authority to detain the prisoner and was guilty of false imprisonment because his authority as deputy sheriff existed only in Providence county and not elsewhere. And it was further stated that he had no more authority to detain the prisoner in Kent county than he had to arrest him there.

The status of a member of the state police is wholly different. By virtue of G. L. 1938, chap. 8, §8, he is vested with the authority to enforce the criminal laws anywhere in the state, and he is specifically clothed with "all powers of sheriffs, deputy sheriffs, town sergeants, chiefs of police, police officers and constables." His authority to arrest is, therefore, not confined to any particular county, municipality or judicial district but is coextensive with the territorial limits of the state. Hence, we answer the first question in the negative.

The second question is as follows:

"2. Is the arrest and detention of the defendant illegal since the defendant was arrested on June 3, 1950 at 3:45 P. M. and specific charges were formulated by members of the State Police at 9:00 P. M. on said June 3, 1950, however, the said defendant was not presented for arraignment until 10:00 A. M. on June 4, 1950?"

The contention here is that the arrests were illegal because defendants were not thereafter brought before the court for arraignment within a reasonable time. There is no need to discuss the law governing this matter. It is well

settled that a person arrested must be arraigned within a reasonable time after his arrest. In the instant cases defendants were, in our opinion, arraigned within a reasonable time notwithstanding their enforced detention in jail overnight.

However, defendants contend that they were unwarrantably denied special arraignments. They further contend that the state police were without lawful authority to adopt a policy in "bookie" cases which withheld from them the privilege, customarily accorded other prisoners, of obtaining a special arraignment to avoid being held in jail overnight. We agree that the state police have no express authority to discriminate in that manner. They ought, within reasonable limits, to accommodate all prisoners who are entitled to bail, without regard to the class of offense with which the prisoner is charged. But that is not the point here. While admission to bail generally is a right, a special arraignment is not. It is a privilege, but one which should not be arbitrarily withheld or granted in a discriminatory manner. However, failure of the arresting authority to act impartially in such a matter does not vitiate an otherwise legal arrest. Our answer to the second question is, therefore, in the negative.

The third question reads as follows:

"3. Is the arrest and detention of the said defendant illegal in that members of the State Police arrested the said defendant in the City of Pawtucket, without warrant, on June 3, 1950, at 3:45 P. M., without being so requested by either the Mayor of the City of Pawtucket, or the Chief of Police of said city?"

The defendants urge that this question should be answered in the affirmative for several reasons. They claim that the state police are without authority to make arrests in the city of Pawtucket in the absence of a request by the mayor or the chief of police of that city. In support of such claim they cite the following provision of G. L. 1938, chap.

8, §8, establishing the state police: "The governor may command their services in the suppression of riots, but they shall not exercise their powers within the limits of any city to suppress rioting except by direction of the governor and upon the request of the mayor or chief of police of any city." The defendants argue that such language indicates that the legislature did not intend to authorize the state police to go into any city of their own volition to enforce the criminal laws. On the contrary, it is claimed that they were to enter only upon invitation of the local police authorities. The defendants also argue that Pawtucket's right of "home rule" forbids uninvited intervention by police authorities of the state. In pressing that contention defendants point out that Pawtucket has its own legislative body to govern its affairs and a regular police department authorized and fully empowered to perform all police duties within that city.

There is no merit in any of those contentions. It is obvious from a mere reading of §8 that the above-quoted provision therefrom has no relation to the comprehensive authority to enforce the criminal laws in any part of the state which is expressly vested in the state police by the first sentence of the same section. On the other hand it is clear that the only limitation on their general police authority is directed at their exclusion from any activity in the suppressing of riots in cities except upon invitation of the mayor or the chief of police. The language of that provision is so explicit that it cannot be reasonably extended to include anything else.

The contention that the state police violated the city's right of home rule in exercising its police powers in Pawtucket is equally lacking in merit. As to such contention it seems hardly necessary to say anything further, but contentions of that kind are becoming more frequent and must, therefore, be dealt with at some length. Such a contention is based upon a gross misconception of the nature, intent

and purpose of local self-government or home rule as it is now called. In so far as the enforcement of the criminal laws is concerned there is no such thing as home rule in the sense of the local government excluding the state therefrom. The state is still sovereign in such matters. Its supreme police authority has been in no way restricted by constitutional or statutory delegations of legislative powers to any city or town. Indeed the local police themselves, even though they are maintained and supervised by the local governments, are agencies of the state and the power they exercise is the state's police power. *City of Newport* v. *Horton,* 22 R. I. 196; *Horton* v. *City Council,* 27 R. I. 283. Hence our answer to the third question is in the negative.

The fourth, fifth and sixth questions relate to the constitutionality of G. L. 1938, chap. 625, §68, as amended by P. L. 1941, chap. 982, section 1, clause 11. That clause reads as follows:

> "*Length of Detention.* Every person arrested shall be released either on bail or as provided in clause 10 or shall be brought before a judge of the district court within twenty-four hours from the time of his arrest, unless a judge of the district court of the district where he is detained or of the district court of the district where the crime was committed for good cause shown orders that he be held for a further period of not exceeding (a) twenty-four hours, if he be a resident of this state or (b) forty-eight hours, if he be a nonresident."

> The fourth certified question asks whether such clause is "in conflict with Section 9 of Article I of the Constitution of the State of Rhode Island, which sets out 'all persons imprisoned ought to be bailed by sufficient surety' etc., holding in mind that Section 1 of Chapter 501 of the General Laws of 1938 reads 'every district Court shall be open at all times for the transaction of criminal business.' "

The defendants contend there is such a conflict because the district courts being open at all times by force of the

statute the constitutional right to bail should be available immediately, whereas clause 11 denies an arrested person the enjoyment of such right for twenty-four hours if he is a resident of the state, and forty-eight hours if he is a non-resident. We cannot agree with such contention. In the first place it misconceives the intent of the statute which provides that the district courts shall be open at all times for the transaction of criminal business. This does not mean, as defendants appear to argue, that such courts are in continuous session around the clock. The true meaning of the provision is that they shall be open for criminal business every day regardless of vacations, Sundays, and holidays; and if necessary they may hold special sessions for that purpose at any time during the day after the regular daily session of the court has been adjourned.

With respect to the constitutional provision regarding bail, it was intended thereby to safeguard an arrested person's right to be admitted to bail in a proper case within a reasonable time following his arrest. But it cannot reasonably be construed as a guaranty of the right of an immediate arraignment in order to be forthwith admitted to bail after arrest, as defendants argue. The above statutory and constitutional provisions when rightly understood were not violated in the instant cases. In our opinion, defendants were arraigned within a reasonable time after their arrests. The fact that they were forced to stay in jail overnight because they were denied a special arraignment did not result in any conflict between the above-quoted clause 11 and article I, sec. 9, of our state constitution. Hence, we answer the fourth question in the negative.

The fifth question asks whether clause 11 is

"in conflict with Section 10 of Article I of the Constitution of the State of Rhode Island, which sets out 'nor shall he (defendant) be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land,' holding in mind that Section 1 of Chap-

ter 501 of the General Laws of 1938 reads 'every district Court shall be open at all times for the transaction of criminal business.' "

That question is in some respects repetitive of the fourth question. In our opinion it merits the same answer. The defendants were deprived of their liberty only for a reasonable time after their arrests and before their arraignments, and then only in accordance with the law in such cases made and provided. Therefore, they were in no sense denied due process in violation of article I, sec. 10, of our state constitution. Our answer to the fifth question is, therefore, that there is no conflict between that section and clause 11 as it was applied to defendants.

The sixth question asks whether clause 11 is

"in conflict with Section 14 of Article I of the Constitution of the State of Rhode Island, which sets out 'every man being presumed innocent, until he is pronounced guilty, no act of severity which is not necessary to secure an accused person shall be permitted.' holding in mind that Section 1 of Chapter 501 of the General Laws of 1938 reads 'Every district Court shall be open at all times for the transaction of criminal business.' "

The defendants contend, if we understand correctly, that it was an act of severity such as is expressly prohibited by that section for the state police to deny them a special arraignment and thus force them to remain in jail overnight when they were ready to furnish bail. We do not agree that this was a form of severity such as was contemplated by article I, sec. 14, of the state constitution. Hence, we cannot say that the above-quoted clause 11 as it was applied to defendants is in conflict with that section. Therefore our answer to the sixth question is in the negative.

However, before concluding this opinion we wish to emphasize that in answering the above questions as we have, we are not to be understood as approving the policy which the state police have arbitrarily adopted in denying special arraignments to persons arrested by them in cases like those

before us. As was well said by our predecessors many years ago: "There is evidently no occasion, in most cases, to take the person arrested directly to jail, and thereby subject him to unnecessary mortification and disgrace. A little delay and accommodation on the part of the officer will ordinarily enable a defendant to give bail; and common humanity requires that such favors should be granted. In short, a reasonable opportunity to furnish bail ought always to be given before committing a defendant to jail." *Calderone* v. *Kiernan*, 23 R. I. 578, 579. This admonition is applicable to arrests in criminal as well as in civil cases.

All the questions certified are answered in the negative, and the papers in each case are ordered sent back to the district court of the tenth judicial district for further proceedings.

## ON MOTION FOR REARGUMENT.

### AUGUST 5, 1955.

PER CURIAM. After our decision in the above cases answering certain certified questions in the negative, the defendants asked and received permission to file a motion for reargument. In support thereof their counsel has stated certain reasons on which he bases his contention that justice requires a reargument of the cases. We have carefully considered such motion and reasons and we are of the opinion that they raise no question which in the circumstances warrants reargument.

Motion denied.

*William E. Powers, Atty. Gen., Edward A. Capomacchio, Special Counsel,* for State.

*Nathan Perlman,* for defendants.