370 A.2d 1262.

WILLIAM D. MELLO *vs.* SUPERIOR COURT *et al.*

FEBRUARY 18, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is a habeas corpus proceeding. The petitioner alleges that the Superior Court did not have authority to revoke his bail upon a finding that he had breached a condition of his release and that this action violated his right to bail under the Rhode Island Constitution. He also claims that the trial court deprived him of liberty without due process in contravention of the fifth and fourteenth amendments of the United States Constitution by holding him without bail pending a hearing to determine whether bail should be revoked. We hold that although the issue is technically mooted by the petitioner's

subsequent release from jail, the issue is properly justiciable. Further, we conclude that the Rhode Island Constitution does not preclude a Superior Court justice from revoking bail, nor where proper procedure is followed is a defendant denied due process.

On April 11, 1975, petitioner, whom we shall call Mello, was indicted for receiving stolen goods and possession of a stolen vehicle in violation of G. L. 1956 (1969 Reenactment) §§11-41-2 and 31-9-2, respectively. He was arraigned on May 5, 1975, pled not guilty, and released on $1,000 personal recognizance. On February 27, 1976, an information was filed, charging him with receipt of stolen goods. Mello was arraigned on March 23, 1976, and bail was set at $3,000 with surety. At that point the state moved under Super. R. Crim. P. 46(g) to revoke bail on the April 1975 indictments. Mello was ordered held without bail pending a hearing on the state's motion, scheduled for April 6, 1976. The trial justice conducted a hearing on April 6 and 7, 1976, and found sufficient proof that Mello had violated the terms of his recognizance. Accordingly, personal recognizance was revoked, and Mello was committed to the Adult Correctional Institutions. Approximately 3 weeks later Mello petitioned this court for a writ of habeas corpus. Subsequently, on May 25, 1976, he pleaded nolo contendere to the three charges and was sentenced.[1]

## I.

The state has urged that the petition should be dismissed because the issue presented is moot. Mello is no longer being held without bail on his original charges, and no order of this court would be of any assistance to him. The state has quite properly enunciated the general rule,

---

[1]Mello received deferred and suspended sentences except for 60 days to be served at the Adult Correctional Institutions and was also given credit for time served. He is no longer incarcerated.

for we have said on numerous occasions that we will consider cases only where live issues exist. We will refrain from addressing moot, abstract, academic, or hypothetical situations. *See Perry* v. *Petit,* 116 R.I. 89, 352 A.2d 396 (1976); *Ramsdell* v. *Kiely,* 111 R.I. 1, 298 A.2d 144 (1973); *Town of Scituate* v. *Scituate Teachers' Ass'n,* 110 R.I. 679, 296 A.2d 466 (1972); *Lauder* v. *Zoning Bd. of Review,* 100 R.I. 641, 218 A.2d 476 (1966).

However, in certain situations we will depart from the ordinary to better deal with the extraordinary. *See Tamborelli* v. *Amazine,* 113 R.I. 719, 326 A.2d 857 (1974). The case before us falls into that class, for while it is clearly established that we will not waste precious judicial time on moot questions, it is equally well-established that there are questions of extreme public interest which are capable of repetition but somehow evade review. These demand our attention and quite properly come before us for decision. *Lemoine* v. *Martineau,* 115 R.I. 233, 342 A. 2d 616 (1975); *School Comm.* v. *Westerly Teachers Ass'n,* 111 R.I. 96, 299 A.2d 441 (1973); *Chernov Enterprises, Inc.* v. *Scuncio,* 107 R.I. 439, 268 A.2d 424 (1970). Accordingly, we will consider the substantive issues presented here.

## II.

A defendant's right to bail is guaranteed by R. I. Const. art. 1, §9. "All persons imprisoned ought to be bailed by sufficient surety, unless for offenses punishable by death or by imprisonment for life, when the proof of guilt is evident or the presumption great." In *Taglianetti* v. *Langlois,* 105 R.I. 596, 253 A.2d 609 (1969), we interpreted this section as providing bail as a matter of right, subject, of course, to a showing by the state in certain cases that proof is indeed evident or the presumption great. Recently we have ruled that even though a trial court has decided that the state has satisfied the so-called constitutional

burden of proof, the court still retains its discretionary power to grant the accused bail. *Fountaine* v. *Mullen,* 117 R.I. 262, 269-70, 366 A.2d 1138, 1143 (1976).

It has been contended that this right is absolute and cannot be infringed by the imposition of conditions. This just is not so. We have recognized that the primary purpose of bail is to ensure the defendant's presence at court. *Lemme* v. *Langlois,* 104 R.I. 352, 244 A.2d 271 (1968); *Quattrocchi* v. *Langlois,* 100 R.I. 741, 219 A.2d 570 (1966). Few, if any, would contend that bail could not be conditioned on the defendant's promise to appear when the court calls. *See Rendel* v. *Mummert,* 106 Ariz. 233, 474 P.2d 824 (1970). When one free on bail commits other crimes, the pressure to flee the court's jurisdiction and fail to appear when summoned is apt to increase. Thus, bail may also be conditioned on the continuing good behavior of the accused. *Rendel* v. *Mummert, supra.* Both of these conditions are specifically authorized by Super. R. Crim. P. 46(d) and G. L. 1956 (1969 Reenactment) §12-13-1.

We fail to see how the imposition of these conditions is unconstitutional, since they are integrally related to the right afforded and are but reasonable attempts by the Legislature and the judiciary to balance the interest of the accused against that of the state. The object of bail is "* * * to put the accused as much under the power of the court as if he were in the custody of the proper officer." *Lemme* v. *Langlois, supra* at 356, 244 A.2d at 273. We feel that these conditions are a legitimate means of achieving that goal.

In this case bail was granted, liberty was afforded, and Mello accepted the trial justice's reasonable conditions as to good behavior. It was subsequently discovered that Mello had violated one of those conditions. The question is not whether he ought to have been bailed on the second

or any other subsequent charge,[2] but whether bail on the first set of charges could be revoked in consequence of his knowing and wilful disregard of the court's order.

Mello has urged that there are sanctions provided for the breach of a condition. He directs us to Super. R. Crim. P. 46(e) and (g), which provide for criminal contempt and forfeiture of the bail, respectively.[3] Additionally, it has been suggested that following forfeiture, new and higher bail can be set with more stringent conditions than previously.[4] While we recognize that these options are certainly available to the trial justice, we do not find he is restricted to them. *See* Super. R. Crim. P. 46(e). Moreover, we do not think our Constitution must be read as providing a continuing, renewable right to bail on the same charge where a bail condition has been breached. The state need not keep freeing the defendant while upping the ante.

Our search for authority on this point has revealed that insofar as the issue has been addressed (which is minimal) jurisdictions are split. At least one state has said that where the defendant breached bail by a failure to appear at court, bail must be given again. *Wallace* v. *State,* 193 Tenn. 182, 245 S.W.2d 192 (1952). However, for the reasons that follow we find the rationale of those authorities supporting revocation of bail more persuasive.

It is our conclusion that a specific statute granting the trial court authority to revoke bail is not necessary, since a court with jurisdiction over a criminal case has the power to enforce its orders as to bail just as it has control

---

[2]Bail was in fact set on the second charge.

[3]Other thoughts on appropriate remedies for breach of bail conditions can be found in *Bail as a Matter of Right—In re Underwood,* 26 Hastings L.J, 559 (1974).

[4]*Id.* at 585.

over other orders. *People ex rel. Hemingway* v. *Elrod,* 60 Ill.2d 74, 83, 322 N.E.2d 837, 842-43 (1975). The ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Pretrial Release,* §5.7 Commentary (approved draft, 1968), has reasoned that where the defendant is shown to have violated a condition related either to risk of nonappearance or criminal activity, the court would be authorized to revoke release.

At least two states have adopted this posture. The court in *Elrod* stated that a court "* * * has the inherent authority to enforce its orders and to require reasonable conduct from those over whom it has jurisdiction. To this end the court has authority to impose sanctions * * * including the revocation of his release in the manner provided in [ABA] Standards 5.6, 5.7 and 5.8." *People* v. *Elrod, supra* at 83-84, 322 N.E.2d at 842-43. *Accord, Tijerina* v. *Baker,* 78 N.M. 770, 438 P.2d 514 (1968).

It has been argued that allowing a trial court to revoke release in this manner treads perilously close to the precipice of preventive detention. We have a different view of the terrain. The cases brought to our attention in support of this argument are not in point. Most frequently cited is *In re Underwood,* 9 Cal. 3d 345, 508 P.2d 721, 107 Cal. Rptr. 401 (1973), where the California Supreme Court rejected the theory that bail can be denied for public safety reasons. The facts of that case are distinguishable from those at bar, however, because there a trial justice granted bail on the first charge but denied it on the second group of charges. *Martin* v. *State,* 517 P.2d 1389 (Alas. 1974), which endorsed the *Underwood* rationale, addressed three separate appeals only one of which was granted, again where bail was denied on a second charge because the defendant was "a danger to society." Similarly, *State* v. *Pray,* 133 Vt. 537, 346 A.2d 227 (1975), and *Commonwealth* v. *Truesdale,* 449 Pa. 325, 296 A.2d

829 (1972), involved situations where bail was denied because of risk of harm to the public, *not* because of breach of a condition. *State* v. *Pray, supra,* dealt with a defendant who was convicted, won a new trial, and was then denied bail on grounds of risk to the public. *Commonwealth* v. *Truesdale, supra,* addressed the problem of preventive detention where the defendant was initially denied bail on a murder charge. This simply is not the case before us. Mello was not denied release on his second charge in order to protect the public. He was detained because he violated a reasonable condition of his original release.

In discussing sanctions for violations of pretrial release conditions, the ABA noted the possible preventive detention claim: "Whatever force constitutional arguments against preventive detention have is surely diminished if the defendant has once been released but has demonstrated a deliberate intent to violate reasonable restrictions aimed at protecting public safety." ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Pretrial Release, supra,* §5.7 Commentary. The authority of the court to revoke bail in certain situations ought not to be construed as authority to exercise preventive detention. The former is a sanction for past acts, the latter a prophylactic for the future. We are concerned with the former. Thus, it is our conclusion that the trial court has inherent authority to revoke bail and that this action does not constitute preventive detention.

### III.

Finally, we reach the question of what rights a defendant has when faced with possible bail revocation. In this case Mello was held for approximately 2 weeks without bail pending the revocation hearing. Because he had not been convicted on either set of charges, the presumption of innocence still attached.

There can be little doubt that one's interest in remaining free on bail falls within the "liberty or property" language of the fourteenth amendment. Nor could one argue that the deprivation of liberty which follows bail revocation does not condemn one "to suffer grievous loss." *Joint Anti-Fascist Refugee Comm.* v. *McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 647, 95 L.Ed. 817, 852 (1951). Therefore, the requirements of due process apply to bail revocation proceedings.

It seems to us that under these circumstances a revocation hearing is subject to the same requirements as a bail hearing in the first instance. On December 2, 1976, this court approved an amendment to Super. R. Crim. P. 5 so that an arrested person is to be afforded "a prompt hearing" before a justice of the District Court or an officer authorized to bail persons, and if the individual is charged with any of the offenses delineated in §12-13-1.1 the District Court *"may* order" the individual to be brought before a justice of the Superior Court "as soon as practicable" but no more than 48 hours thereafter (excluding Saturday, Sunday, or a legal holiday), and the Superior Court justice is required to hold a bail hearing then or set a hearing date which shall be "the earliest practicable date for the hearing to be held." Although a bail revocation hearing generally operates true to its name, all would concede that new bail *could* be set at that time. An arrested person has the "* * * right to be admitted to bail in a proper case within a reasonable time following his arrest." *State* v. *Wax,* 83 R.I. 319, 328, 116 A.2d 468, 472 (1955). Said another way, a defendant awaiting a revocation hearing still has the right to a speedy determination of his status.

While we eschew the temptation to formulate a neat schedule of minimum and maximum time frames, we do find that a 2-week delay, absent a defendant's consent, is not to be countenanced. If the state wishes to urge bail

revocation, the state must be prepared to act forthwith. A bail revocation hearing must be conducted with the same promptness as a hearing in the first instance, allowing, of course, for variations according to circumstances.

Further, we conclude that a defendant facing bail revocation is jeopardized at least as much as one facing revocation of parole,[5] or probation,[6] or imposition of sentence for breach of a deferred sentence agreement.[7] Therefore, the rights afforded defendants in these latter situations must attach to a defendant in a bail revocation proceeding.

Last, but not least, is the question of what standard of proof is to be applied. In this situation a defendant is not entitled to all the due process requirements guaranteed for a strict and formal trial. *Tate* v. *Howard,* 110 R.I. 641, 296 A.2d 19 (1972). Indeed, we do not intend that these hearings be cloaked in the garb of full trial. Accordingly, we reject the contention that the alleged breach of bail must be proven beyond a reasonable doubt. In the past we have spoken in terms of evidence which would "reasonably satisfy that there had been a violation." *Walker* v. *Langlois,* 104 R.I. 274, 282, 243 A.2d 733, 737 (1968). We adopt that standard of proof for bail revocation hearings as one which will require the state to go beyond probable cause and will afford a defendant the necessary due process.

The petition for habeas corpus is granted pro forma.

Petition for reargument denied.

Mr. Justice Doris, dissenting. The petitioner's first claim is that the Superior Court acted in violation of his con-

---

[5]*See Morrissey* v. *Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

[6]*See State* v. *Welch,* 114 R.I. 187, 330 A.2d 400 (1975); *Tate* v. *Howard,* 110 R.I. 641, 296 A.2d 19 (1972); *Walker* v. *Langlois,* 104 R.I. 274, 243 A.2d 733 (1968).

[7]*See O'Neill* v. *Sharkey,* 107 R.I. 524, 268 A.2d 720 (1970).

stitutional right to bail in revoking his personal recognizance solely on account of a subsequent arrest. The central issue raised by the petitioner's claim is not whether the Superior Court justice had the power to impose a condition that the petitioner refrain from criminal conduct, but whether revocation of bail was a proper remedy for violation of such a condition.

I first consider the nature of the constitutional right to bail of one awaiting trial on charges not punishable by death or life imprisonment. R.I. Const. art. I, §9 provides as follows:

> "All persons imprisoned ought to be bailed by sufficient surety, unless for offenses punishable by death or by imprisonment for life, when the proof of guilt is evident or the presumption great."

It is firmly established that this provision is to be broadly construed. The right to bail is a cornerstone of our criminal justice system. All offenses, even those which call for a punishment of life in prison, are bailable as a matter of right. *Taglianetti* v. *Langlois,* 105 R.I. 596, 253 A.2d 609 (1969). The practice of admission to bail as it has evolved in Anglo-American law, is not a device for keeping persons in jail upon mere accusation until it is found convenient to give them a trial. On the contrary, the spirit of the procedure is to enable them to stay out of jail until a trial has found them guilty. *Stack* v. *Boyle,* 342 U.S. 1, 7-8, 72 S.Ct. 1, 5, 96 L.Ed. 3, 8 (1951) (concurring opinion). The object of bail in a criminal case is to assure the presence of the accused in court at the time of trial. *Lemme* v. *Langlois,* 104 R.I. 352, 244 A.2d 271 (1968); *Quattrocchi* v. *Langlois,* 100 R.I. 741, 219 A.2d 570 (1966); *Benoit* v. *Langlois,* 96 R.I. 129, 189 A.2d 805 (1963). See cases collected at Note, 75 Dick. L. Rev. 639, 643 n.35 (1970).

The state concedes that petitioner has a constitutional right to bail while awaiting trial of the charges against

him. However, the state contends that violation of the statutory condition of good behavior imposed by Super. R. Crim. P. 46(d)[1] and G. L. 1956 (1969 Reenactment) §12-13-1[2] justifies revocation of bail. Accordingly, since the rearrest of petitioner on a new charge constituted probable cause to believe he had breached that condition, the state argues the court did not err in revoking petitioner's personal recognizance. I cannot agree with the state's argument.

As stated above, there is little doubt that conditions may be imposed on the grant of bail. Even where the right to

---

[1]Super. R. Crim. P. 46(d) provides:

"A person required or permitted to give bail shall execute a recognizance in such form as may be prescribed to assure for his appearance, for his good behavior and that he will keep the peace. The court, having regard to the considerations set forth in subdivision (c), may require one or more sureties, may authorize the acceptance of cash or bonds or other security in an amount equal to or less than the face amount of the recognizance, or may authorize the release of the defendant without security upon his written agreement to appear at a specified time and place and upon such conditions as may be prescribed to insure his appearance."

[2]General Laws 1956 (1969 Reenactment) §12-13-1 provides:

"Every person who is held on any criminal process to answer to any indictment, information, or complaint against him shall be released upon giving recognizance with sufficient surety or sureties before a justice of the supreme or superior court or, before a justice of the district court, when the complaint is pending in said court or such person is held to answer to said court, in the sum named in such process, if any have been named therein, and if none be named, then in such sum as such justice shall deem reasonable, to appear before the court where such indictment, information, or complaint is pending against him, or to which he may be bound over to appear, to answer to such indictment, information, or complaint, and to answer the same whenever called upon so to do, and abide the final order of the court thereon, and in the meantime keep the peace and be of good behavior, and any such justice may take such recognizance in any place within the state, and said recognizance shall be returned to the court to which the accused has recognized to appear."

bail is "absolute", an accused may be admitted to bail only upon the manifestation of "sufficient surety". R.I. Const. art. I, §9. It is also clear that bail may be conditioned on the appearance of the accused in court when called. And, since the commission of a crime by one on bail is likely to increase the pressure on him not to appear before the court for his trial, bail may also be conditioned on the continuing good behavior of the accused. *Rendel* v. *Mummert,* 106 Ariz. 233, 474 P.2d 824 (1970). The real question in this case is whether *revocation* of bail is a proper remedy for breach of those conditions. Relatively few courts have addressed the issue of revocation as it relates to a condition to keep the peace and be of good behavior. In the past, however, attention has been directed to the effect of a failure by the accused to appear in court, in violation of the conditions of his release on bail. The majority of the cases hold that the failure of one who is released on bail before trial to appear before the court when called does not strip that person of the right to be admitted to bail a second time. 8 C.J.S. *Bail* §36(13) (1962). *See Rowan* v. *Randolph,* 268 F. 527 (7th Cir. 1920); *Wallace* v. *State,* 193 Tenn. 182, 245 S.W.2d 192 (1952). In *Wallace,* the court said:

> "Under the foregoing authority it is a matter of grave doubt if the trial court is authorized to deny the right of an accused to bail on the ground that he had forfeited a prior bond, even though the court may be convinced that he is trifling with the court, or is otherwise contemptuous of its authority to bring him to trial. The constitutional guarantee of the right to bail contains no exceptions." *Id.* at 188, 245 S.W.2d at 194.

Other cases are collected in Annot., 29 A.L.R.2d 945 (1953).

The rationale of these holdings is that the constitution grants a right to bail subject only to the condition of sufficient surety. To deny bail for breach of any other condi-

tion would be to impose additional constraints not found in the constitution. The cases point out that the amount of bail may be raised, if in the opinion of the court such increase is necessary to reasonably insure the presence of the accused. But bail may not be denied altogether.

I believe the same rationale applies to the case at bar. Our constitution does not condition the right to bail on the good behavior of the accused pending trial. If revocation were allowed for breach of such condition, it would read into the constitution a provision that is not in fact there. This is the same line of reasoning that was followed in *Palmer* v. *District Court*, 156 Colo. 284, 398 P.2d 435 (1965). There the trial court denied bail on the ground that the defendant, after having fled while on bail, returned and pleaded not guilty to the charges by reason of insanity. The denial of bail was reversed.

> "The mandate of the constitutional provision is that persons charged with offenses are bailable with the one exception mentioned. [Citations omitted.] The mention of the one exception excludes other exceptions. Courts would violate their mandate if they were to add another to the exception expressed in the [constitution]." *Id.* at 287, 398 P.2d at 437.

Indeed, the "absconding" cases described above are the most likely of all to allow revocation for breach of condition. The condition in those cases was intimately related to the purpose of bail: guaranteeing the presence of the accused at trial. In contrast, the condition of good behavior imposed on petitioner relates only tangentially to the function of bail. If violation of the former condition, which strikes at the very core of the bail system, does not warrant denial of subsequent bail, surely that result cannot follow the breach of a condition of good behavior.[3]

---

[3]A discussion of the problems of finding an appropriate remedy for breach of bail conditions may be found in *Bail as a Matter of Right—In re Underwood*, 26 Hastings L.J. 559 (1974).

It may be argued that the result of requiring readmission to bail after breach of a condition of release may be to put the court in a position that is at first glance contradictory. Indeed, in the ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Pretrial Release* §5.8 Commentary (Approved Draft, 1968) the authors say that "* * * the spectacle of the bailed defendant securing release on a second charge is difficult to justify." But there is no contradiction. The "spectacle" results from the failure of the criminal laws to deal with the multiple offender. The way to correct that problem is through narrowly drafted statutes aimed at the multiple repeater. To suggest that bail should be denied those who have or are likely to engage in repetitive criminal activity is to misconstrue the purpose of the bail system and the nature of the constitutional right to bail. However, I point out here what will be described at greater length below, that it is not meant to leave the court without a means of enforcing its orders. If a condition of bail is breached, bail may be forfeited and a new bail set. If the breach is flagrant, citation for contempt may be appropriate. But a court should not be allowed to enforce its orders by attempting to withhold constitutional rights.

A further ground for my holding is that revocation of bail solely for breach of a condition of good behavior comes perilously close to preventive detention. Although the rationale put forward to justify such action is that revocation in such circumstances depends only on past actions, not future crimes, it cannot be ignored that many times the actual reason, and indeed the actual effect, of revocation of bail for breach of condition of good behavior is to detain the accused because there is a fear that he will commit additional crimes if released. This of course is not a permissible use of the bail system. While I recognize the very real public interest inhering in the prevention of

criminal activity, I conclude that the consideration of that interest is not relevant to the decision to grant or revoke bail. The evils of preventive detention are too well known to require a lengthy discussion at this point. *See generally Preventive Detention Before Trial*, 79 Harv. L. Rev. 1489 (1966). Many cases have held that danger to the public interest may not be considered as a factor in admission to bail. *E.g., In re Underwood*, 9 Cal.3d 345, 350, 107 Cal. Rptr. 401, 404, 508 P.2d 721, 724 (1973);

> "We are compelled to the conclusion that the detention of persons dangerous to themselves or others is not contemplated within our criminal bail system, and if it becomes necessary to detain such persons, authorization therefor must be found elsewhere, either in existing or future provisions of the law."

*Accord, Martin* v. *State*, 517 P.2d 1389 (Alas. 1974); *Commonwealth* v. *Truesdale*, 449 Pa. 325, 296 A.2d 829 (1972); *State* v. *Pray*, 133 Vt. 537, 346 A.2d 227 (1975). I concur with those cases insofar as they hold that bail may not be denied on the ground of public safety.

The state next argues that revocation was permissible in the case at bar pursuant to the generally recognized power of a court to preserve order in the conduct of a criminal trial. Whether such a principle exists need not be decided here, because the cases to which the state refers are distinguishable from the case at bar. A typical statement of the principle may be found in *Fernandez* v. *United States*, 81 S.Ct. 642, 644, 5 L.Ed.2d 683, 686 (Harlan, Circuit Justice, 1961):

> "* * * District Courts have authority, as an incident of their inherent powers to manage the conduct of proceedings before them, to revoke bail during the course of a criminal trial, when such action is appropriate to the orderly progress of the trial and the fair administration of justice."

The facts of that case reveal that threats against govern-

ment witnesses were made in the courtroom; that one of the defendants was injured in an automobile accident thought to be contrived; and that alleged tampering with another government witness occurred. Obviously the situation in that case is distinguishable from that in the case at bar. There, it was probable that if bail was not revoked the entire judicial process would be frustrated. Here, there was no threat to orderly court procedure. The actions of petitioner which were in violation of the court's order had nothing to do with the court process; nor was there any ground to believe that his future actions would interfere with the court. The possibility, based only on the fact that he had been charged with a crime while on bail, that petitioner would commit some crime, somewhere before his trial, clearly does not constitute the serious threat to the judicial process that intimidation of witnesses does. The drastic step of bail revocation is not required in the circumstances presented here.

Virtually all the cases on which the state relies to establish the power of the court to revoke pretrial bail involved threats to government witnesses at the time of trial. *Carbo* v. *United States,* 82 S.Ct. 662, 7 L.Ed.2d 769 (Douglas, Circuit Justice, 1962) (witness received over 200 threatening phone calls and was severely beaten); *Dorman* v. *United States,* 435 F.2d 385 (D.C. Cir. 1970) (intense feeling of danger; menacing manner toward witness); *United States* v. *Gilbert,* 425 F.2d 490 (D.C. Cir. 1969) (alleged threat to kill complaining witness); *United States* v. *Rice,* 192 F. 720 (C.C.S.D.N.Y. 1911) (revocation declared only way to protect jury); *Tijerina* v. *Baker,* 78 N.M. 770, 438 P.2d 514 (1968) (principal government witness and jail guard murdered). Since no such threat arises solely by reason of breach of a condition of good behavior by the accused, the above cases do not authorize revocation in the instant case.

An additional argument advanced by the state is that revocation of petitioner's bail was permissible because his constitutional right to bail was, in effect, exhausted after petitioner was once admitted to bail. A similar suggestion appears in the ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Pretrial Release, supra.* The authors say: "The defendant held to answer on a second charge has once been granted bail or some other form of release, and to that extent his constitutional right to bail has been satisfied." I do not believe the right to bail is so limited. The right to bail is a continuing right. Until the accused has been convicted of a crime, he has a constitutional right to bail. Accordingly, I would hold that the right to bail for a non-capital offense not carrying a sentence of life imprisonment may not be revoked *solely* because of a violation of a condition of release.

I realize that this conclusion is not in accord with three recent cases to which the state directs our attention. Before proceeding further, I feel it necessary to explain why I do not find these cases persuasive.

In *State* v. *Churchill,* 133 Vt. 338, 341 A.2d 22 (1975), the Vermont Supreme Court apparently felt that the revocation of bail for breach of a condition of release did not give rise to any constitutional conflict. The court affirmed the revocation solely on the basis of a statute empowering the court to refuse bail.[4] In light of my view of the con-

---

[4]"Defendant contends that the actions of the court * * * are in violation of his right to bail under 13 V.S.A. §7554 and under chapter II, §32 of the Vermont Constitution. * * *

"We recognize a split of authority over whether or not bail may be revoked altogether after breach of conditions of release. * * *

"But 13 V.S.A. §7554(a) allows release on conditions *unless* the court determines that the release will not reasonably insure appearance at trial, or that the release will constitute a danger to the public. Thus, under our statute, the court may properly refuse bail." *State* v. *Churchill,* 133 Vt. 338, 340, 341 A.2d 22, 23 (1975).

stitutional question in this case, I cannot accept the result reached in *Churchill*.

The arguments in the other two cases, *People ex rel. Hemingway* v. *Elrod*, 60 Ill.2d 74, 322 N.E.2d 837 (1975), and *Rendel* v. *Mummert*, 106 Ariz. 233, 474 P.2d 824 (1970), are directed primarily toward establishing that conditions may be imposed upon one admitted to bail. I do not disagree. But neither of those cases considers very extensively the source of the supposed power to revoke bail for breach of such conditions. To the extent the question is considered, the power to revoke is grounded on the inherent authority of a court to enforce its orders and its authority to preserve the criminal process. As to the first ground, as stated earlier I feel that the proper means of enforcement of court orders is the contempt process. The grant or denial of bail should not be used to *punish* the accused. As to the second ground, I believe it is inapplicable to the case at bar. No threat is posed to the criminal process. The cases relied upon in both opinions to establish the power to revoke are the witness-intimidation cases described above which I find distinguishable.[5] To the ex-

---

[5]I also note that in *Rendel* v. *Mummert*, 106 Ariz. 233, 474 P.2d 824 (1970), the court itself may not have intended to uphold revocation of bail solely for violation of a condition that the accused be a law-abiding citizen. In discussing the rationale for upholding the statute permitting revocation, the court said of that statute:

"It merely permits the court to revoke the bail when it finds under the facts of the case coupled with the finding of probable cause in another case, *that a defendant probably would not appear for trial.* The court could well be of the opinion that under the circumstances the accused would flee to avoid trial. Under the inherent power of the court it would be permitted to hold him without bail for trial." (Emphasis added.) *Id.* at 238, 474 P.2d at 829.

The court appears to be saying that revocation is permissible only if the accused commits a crime in violation of his bail conditions *and* the court finds that as a result the defendant will flee. Of course, if the latter finding is made, the court always has the power to revoke bail whether a condition is breached or not.

tent that those cases base the revocation of bail on the need to protect the public, I disagree for the reasons stated earlier.

At this point a few remarks are necessary to clarify the limited nature of my holding in this case. I do *not* hold that no conditions may be imposed on bail. To the contrary, bail is by its nature conditional. The court may require whatever conditions it feels are necessary to insure the presence of the accused at trial. In the past, courts have generally only required a bond, with or without security, as well as the statutory condition of good behavior. However, a court is not limited to such devices. An excellent example of the range of conditions which may properly attach to bail may be found in *United States* v. *Alston,* 420 F.2d 176 (D.C. Cir. 1969).[6] The conditions on release

---

[6]The conditions imposed in that case were as follows:

"Ordered by the court that appellant shall be released on his personal recognizance on the following conditions:

"1. Upon the representation of counsel that appellant Alston has obtained regular employment within the Washington Metropolitan Area, he shall be released.

"2. Appellant's employer shall report immediately to ——————— upon appellant's failure to present himself for work at the proper time, and ——————— shall report that failure to counsel for the United States, counsel for appellant, and the Criminal Clerk's Office of the United States District Court for the District of Columbia.

"3. Appellant shall re-enroll in the Alcoholic Rehabilitation Clinic, at 14th and Q Streets, N.W., and participate in a satisfactory manner in the prescribed program.

"4. Appellant shall reside at the Shaw Residence, 1770 Park Road, N.W.

"5. An appropriate official of the Shaw Residence is to report immediately to ——————— upon appellant's failure to return to the residence by curfew time, or upon appellant's failure to abide satisfactorily by the rules and regulations of the Shaw Residence. The District Court shall, upon advice of counsel, determine the appropriate Shaw Residence official.

"6. Appellant shall not leave the Washington Metropolitan Area, and shall not leave the District of Columbia except as his employment may necessitate, without the permission of the District Court.

suggested in the ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Pretrial Release* §5.2 (Approved Draft, 1968), also reflect the broad scope of the discretion of the trial justice. I note that breach of a prior bail condition or anticipated criminal activity *may* be considered in setting the terms or amount of bail. *See Commonwealth* v. *Truesdale*, 449 Pa. 325, 296 A.2d 829 (1972).

I am persuaded, however, that a mere violation of a condition of release, per se, does not justify revocation of the right to bail. This does not leave the court without means to combat violations. If a condition is breached, Super. R. Crim. P. 46(g) provides for a forfeiture of the bail.[7] While the accused does have a constitutional right to be readmitted to bail, he has no right to be readmitted on the same terms as he was previously given. If his actions indicate, as they very well might, that the accused is less likely to appear at trial than was previously thought, bail may be raised and more stringent conditions on release

---

"7. Every pay period, appellant shall deposit 10% of his net earnings, unless and until this sum reaches $500, with the Clerk of the District Court as security for his appearance, to be returned in full when appellant appears for trial, or to be forfeited in whole or in part, as directed by the District Court, should he fail to appear. Permissible variation: The sums shall be deposited with counsel, instead of the Clerk, who shall hold them subject to order of the District Court, but if the sum reaches $500, counsel shall transfer forthwith to the Clerk. If appellant should violate the terms of his release before such deposit is made, that portion which has already been deposited with his attorney shall be forfeited. Appellant shall remain subject to all criminal penalties, including fines, for failure to fulfill the conditions of his release.

"8. Appellant shall sign a statement indicating his understanding of the conditions set forth above and promising his compliance with them." *United States* v. *Alston*, 420 F.2d 176, 180 (D.C. Cir. 1969).

[7] Forfeiture of the bail, of course, does not mean forfeiture of the *right* to bail, but simply means the accused forfeits any security and becomes liable on his bond.

may be set. This procedure is authorized by G. L. 1956 (1969 Reenactment) §12-13-11 and has been approved by this court. *In re Mariano,* 34 R.I. 534, 84 A. 1086 (1912). If it appears that there is nothing the accused could do to adequately assure the court of his presence when required, the court in its discretion could refuse bail entirely. *Commonwealth* v. *Truesdale, supra.*[3] It is important to note that in cases of the latter sort, bail is revoked not simply because a condition of bail was breached, but because under the circumstances the court is convinced that the defendant will not otherwise appear for trial.

Furthermore, the court may by means of the contempt power punish any violations of its orders. The availability of this remedy is assured, not only by the inherent powers of the court, but by Super. R. Crim. P. 46(e), which expressly provides that violations of the terms of a recognizance may be punished as a contempt of court.

Finally, if there is reason to believe that the accused ought to be detained to protect himself or to protect others, authorization may be found in G. L. 1956, chapter 28.2 of title 21, in the case of narcotic addicts, or chapter 5 of title 40.1, in the case of the mentally ill, or in any other relevant statutes.

For the reasons stated, I respectfully dissent from the conclusion reached by the majority that the trial court has inherent authority to revoke bail because a condition is

---

[3]That court stated:

"We do not intend by this opinion that pretrial bail may not be denied regardless of the circumstances. As noted before, the right to release before trial is conditioned upon the accused giving adequate assurance he or she will appeal for trial. If upon proof shown, the court reasonably concludes the accused will not appear for trial regardless of the character or the amount of the bail, then in such an instance bail may properly be denied, regardless of the nature of the charges." *Commonwealth* v. *Truesdale,* 449 Pa. 325, 337, 296 A.2d 829, 835-36 (1972).

breached since I am convinced that such action constitutes preventive detention.

*Edward John Mulligan, William F. Reilly,* Public Defender (Amicus Curiae), *Barbara Hurst,* Asst. Public Defender (Amicus Curiae), for petitioner.

*Julius C. Michaelson,* Attorney General, *Gregory L. Benik,* Special Asst. Attorney General, for respondent.