Plaintiffs Carol Manglass and Todd Manglass, as parents and natural guardians of Madeleine Manglass (Plaintiffs), appeal a December 12, 2002 final agency decision of the Rhode Island Department of Human Services (Defendant/DHS), reducing the number of hours for Home-Based Therapeutic Services (HBTS) provided to the minor child, Madeleine Manglass. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
Madeleine Manglass, a minor child born on December 13, 1999, was diagnosed with Williams Syndrome, a congenital disorder causing global developmental delays and behavior problems. Madeleine receives Medical Assistance through a group known as "Katie Beckett" and qualifies for Home-Based Therapeutic Services (HBTS) through the Early and Periodic Screening and Diagnostic Treatment Program (EPSDT). The EPSDT program is part of the Rehabilitative Services of the Rhode Island Department of Human Services Medical Assistance Program, the authority for which is derived from Title XIX of the Social Security Act.
On September 3, 2003, Plaintiffs submitted a six-month treatment plan for Madeleine to receive 40 hours of Home-Based Therapeutic Services. Plaintiffs' request for HBTS, along with supporting documentation provided by the Plaintiffs, was reviewed by DHS in September 2002. The supporting documentation included a letter from the child's pediatrician, an evaluation from Children's Hospital in Boston and the HBTS proposal from the LaPlante center. Dr. Frank Canino, Ph.D., a licensed clinical psychologist and consultant for the agency, conducted the review and determined that 40 hours would prove too intensive for the child. A factor in this determination was that Madeleine was already receiving services from Early Intervention and would soon be eligible for a full day language-based school program. Dr. Canino did agree that HBTS was required but recommended 15 hours per week. Plaintiffs were so notified on September 25, 2002.
Plaintiffs were dissatisfied with this decision and filed a request for an administrative hearing on October 7, 2002. At the hearing on November 13, 2002, the hearing officer heard testimony from Robert Harris of the LaPlante Center; Plaintiff Carol Manglass; Anne Roach, RN, M.Ed; and Dr. Frank Canino. Based on this testimony along with the supporting documentation, the hearing officer rendered a decision on December 12, 2002. In its decision, DHS recommended reducing the number of HBTS hours from 40 to 15. Plaintiffs filed a timely appeal to this Court, arguing that the agency determination was in error and was arbitrary and capricious based on the evidence.
 STANDARD OF REVIEW
Rhode Island General Laws § 42-35-15 (g) governs the Superior Court's scope of review for an appeal of a final agency decision. G.L. 1956 § 42-35-15 (g). The statute provides, in relevant part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
G.L. 1956 § 42-35-15. Sitting as an appellate court with a limited scope of review, the Superior Court justice may not substitute his or her judgment for that of the agency with respect to the credibility of the witnesses or the weight of the evidence as to questions of fact. Centerfor Behavioral Health v. Barros, 710 A.2d 680, 684 (R.I. 1998); MineSafety Appliances Co. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). This directive applies even if the court may have been inclined to arrive at different conclusions and inferences upon review of the evidence and the record. Johnston Ambulatory Surgical Assocs. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Rhode Island Pub. Telecomm. Auth. v. Rhode IslandState Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994)); BarringtonSch. Comm. v. Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992).
Additionally, as long as "substantial evidence" exists to support the agency's determination, the Superior Court must uphold the decision.Barros, 710 A.2d at 684 ("In reviewing an administrative agency's decision, the Superior Court is limited to an examination of the certified record to determine whether the agency's decision is supported by substantial evidence"); see Environmental Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1993) ("The Superior Court is confined to a determination of whether there is any legally competent evidence to support the agency's decision"). The Rhode Island Supreme Court has defined substantial evidence as "`such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'"[1]Newport Ship Yard v. Rhode Island Comm'n for Human Rights, 484 A.2d 893, 897 (R.I. 1984) (quoting Caswell v. George Sherman Sand GravelCo., 424 A.2d 646, 647 (R.I. 1981)). This Court may "reverse, modify, or remand the agency's decision" if; inter alia, the decision is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record or is arbitrary or capricious and is therefore characterized by an abuse of discretion." Barrington Sch. Comm. v. RhodeIsland State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992). The authority to "remand the case for further proceedings" is a broad grant of power, but it is in essence merely declaratory of the inherent power of the court to remand, in a proper case, to correct deficiencies in the record and thus afford the litigants a meaningful review. Lemoine v.Dept. of Mental Health Etc., 320 A.2d 611, 614 (R.I. 1974); see Ferrilli v. Department of Employment Security.106 R.I. 588, 261 A.2d 906 (1970).
 MOOTNESS
As a preliminary issue, this Court must address the potentially dispositive issue of whether the Plaintiffs' claims are moot. The Plaintiffs' HBTS proposal was for a period of six months, beginning in September of 2002 and ending in March of 2003. Although the time period for the proposed services has elapsed, the potential for repetition is great. "A case is moot if it raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy." Seibertv. Clark, 619 A.2d 1108, 1110 (R.I. 1993). In addition, the U.S. Supreme Court has noted that issues are not moot if they are "capable of repetition, yet evade review." Pac. Terminal Co. v. Int. Comm.,219 U.S. 498, 515, 55 L.Ed. 310, 31 So. Ct. 279 (1911). This Court is also mindful that "there are questions of extreme public interest which are capable of repetition but somehow evade review. . . these demand our attention, and quite properly come before us for decision." Mello v.Superior Court, 117 R.I. 578, 581, 370 A.2d 1262, 1263 (1977).
Here, although the original time period for the proposed services has passed, Madeleine's disability will require her to receive intensive rehabilitation services, including HBTS, on a continuous basis. Furthermore, Madeleine will require ongoing support for behavior issues that are common among Williams Syndrome patients. Accordingly, since Plaintiffs' claim is capable of repetition, the issue is not moot.
 REGULATIONS
The Rhode Island Department of Human Services is an agency within the Executive Branch of State Government. R.I. Gen. Laws § 42-12-1, etseq. Pursuant to § 42-12-4 of the Rhode Island General Laws, DHS manages federally and state funded public assistance programs, one of which provides Medical Assistance (MA) benefits to persons who qualify for the benefits under § 40-8-3. G.L. 1956 § 42-12-4 (providing that "[t]he department of human services shall have supervision and management of . . . [a]ll forms of public assistance under the control of the state"). Benefits are provided to all eligible individuals pursuant to regulations developed by DHS. These regulations are approved by the federal government as comporting with federal requirements in accordance with title XIX of the federal Social Security Act. (42 U.S.C. § 1396et seq.)
Section 0394.35 of the Rhode Island Department of Human Services Manual outlines the policy on disability benefits for children who qualify for Medical Assistance under the "Katie Beckett" program. The purpose of this program is to provide "Medical Assistance for home care available to children who might otherwise be disqualified due to the parents' income." 15 020 CRIR 006. To be eligible for this program it must be determined that (1) [t]he child requires the level of care provided in a hospital, a Nursing Facility, or an ICF-MR, (2) the child is being cared for at home and (3) the cost is not greater than that of institutional care. Id.
In addition, Title XIX of the Social Security Act provides for the Early and Periodic Screening, Diagnosis, and Treatment (EPSDT) of eligible Medical Assistance recipients under age 21 to ascertain physical and mental defects, and requires treatment to correct or ameliorate defects and medical conditions found. Children are referred for services from a variety of sources including pediatricians, hospital discharge staff and parents. In order for a child to be determined eligible for in-home services, skilled nursing needs must be identified. When a child is identified as needing in-home nursing care, the physician makes a request to DHS/EPSDT and includes a medical history and description of the child's current status. The DHS staff then meets with the parents and determines the appropriateness of care in conjunction with the physician and others that may be involved with the child. 15 020 CRIR 006, Subsection 0300.20.05.10
 HEARING OFFICER'S DETERMINATION
Upon analysis of Plaintiff's medical records, the report of Dr. Canino, and the testimony at the November 13, 2002 hearing, the hearing officer concluded that the reduction of HBTS hours from 40 to 15 was justified. In reaching her conclusion, the hearing officer addressed the various concerns of agency consultant Dr. Canino, a clinical psychologist. of concern to the consultant was the intensity of the services proposed for Madeleine by the LaPlante Center. The LaPlante Center is a provider of services for medically needy children. Once a child has been identified under the EPSDT program and is eligible for services, the LaPlante Center is contacted to provide services. Their primary service is behavior intervention with the goal of increasing functionality within the home environment. Robert Harris, the program director for the Center, proposed 40 hours of behavior treatment services per week. Dr. Canino indicated that 40 hours would prove to be too much for the child to tolerate. Treatment Plan Review Sheet at 2, Plaintiff's Exhibit 6.
Another concern of Dr. Canino was the type of intervention necessary for Madeleine's needs: mainly that she requires speech and language therapy, occupational therapy, and physical therapy. These therapies would be provided by Early Intervention and the public school system. The LaPlante Center is not currently identified as a provider of speech and language therapy, occupational therapy, or physical therapy. Dr. Canino found it "difficult to accept that participation in school plus the amount of HBTS being proposed could benefit her." Id.
a. Reduction of Hours
It is undisputed that Madeleine Manglass is eligible for EPSDT services under the "Katie Beckett" medical assistance policy. At issue is the amount of HBTS services to be provided. Plaintiffs argue that Madeleine should receive 40 hours per week. In addition, Plaintiffs argue that the agency erred when it based its decision strictly on the reports from professionals who evaluated Madeleine. They contend that Dr. Canino did not evaluate the child himself and, therefore, had no personal exposure to Madeleine's disabilities. Defendant originally approved the proposed 40 hours per week of HBTS for a limited period of time while Dr. Canino reviewed the plan and additional documentation. After reviewing the information, he concluded that a reduction to 15 hours per week would be more appropriate.
Plaintiffs rely on Millerick v. Fascio, 384 A.2d 601, 602-03 (R.I. 1978) wherein the Department of Employment Security denied temporary disability rights to Ann Marie Millerick, a full time student who contracted mononucleosis during her summer employment. Their reliance onMillerick is misplaced. In Millerick, the agency physician's denied benefits without ever examining Millerick personally to determine if she was eligible for benefits. His findings contradicted the conclusion of the treating physician despite utilizing the treating physician's own report. The treating physician maintained that the plaintiff could not return to work based on her test results, but the agency decided she could return to work based on the same test results. Thus, here the agency physician's findings contradicts the treating physician's report without the agency physician having examined the patient.
Unlike the agency consultant in Millerick, Dr. Canino's recommendation was not contrary to the reports of the professionals. The pediatrician's report recommended a home-based speech and language consultation, occupational therapy consultation, and physical therapy consultation, as well as intensive one-on-one services for behavior problems. The pediatrician's report did not indicate the number of hours necessary for these services. The Children's Hospital report, also without recommending a specific number of hours, recommended that Madeleine continue to receive services through Early Intervention and upon turning three, she should receive comprehensive special education services through the school, including a one-to-one aide. The report did not recommend home-based therapy. In fact, evidence in the record suggests that neither of those professionals recommended a specific number of hours.[2]
In addition, the EPSDT regulations do not require the agency to evaluate the child. Pursuant to the regulations, the physician makes a request, providing a medical history and the child's status. The request is reviewed and "the staff would meet with the parents, and determine the appropriateness of care in conjunction with the physician and others that may be involved with the child." 15 020 CRIR 006, Subsection 0300.20.05.10. Dr. Canino reviewed the reports, and while it is unclear from the record whether he met with the parents, he based his recommendation on the records from the physician, as required by the regulations. Accordingly, this Court finds that the agency's reliance on reports from professionals for the basis of its decision was not clearly erroneous.
b. Agency Decision as Arbitrary and Capricious
Plaintiffs next argue that the agency decision was arbitrary and capricious and that there was no reasonable basis for the recommendation of 15 hours. They assert that the agency consultant relied on a schedule given to Children's Hospital for other purposes in determining if there was room in Madeleine's day for the services proposed. They set forth that if the proposed services were approved, the child's schedule would be arranged to accommodate the treatment.
Defendant argues that several factors influenced Dr. Canino's decision to reduce the number of hours suggested by the LaPlante Center. The first of these factors is the child's ability to tolerate such intensity in addition to her participation in a variety of other therapeutic services.[3] Another factor was the existence of discrepancies between the LaPlante Center recommendations and the overall level of functioning described in the evaluation conducted by Children's Hospital.
Pursuant to federal guidelines, Dr. Canino reviewed the information provided by the patient's physician and other professionals in making his recommendation. Based on this information, Dr. Canino concluded that 40 would be too intensive. There is no reliable, probative and substantial evidence in the record, however, to support his reason for recommending 15 hours instead of 40. He gave no reasons for deciding that 15 would be optimal. In fact, the record reveals that DHS had evidence indicating that between 20 and 30 hours is preferential. Additionally, Dr. Canino provided no schedule or framework for which the services were to be provided.
Plaintiffs further argue that the decision was arbitrary because of two letters they received from DHS in April 2003. Both of these letters were from Anne Roach of the Center for Child and Family Health at DHS. The first letter, dated April 10, 2003, approved 40 hours of service. Another letter was received from the agency on April 12, 2003, approving 20 hours of service. These letters not only contradict the findings of Dr. Canino and the hearing officer, but they are also without explanation and contradict each other.
While the record evidences conflicting recommendations, the decision of the agency lacks the requisite elucidated rationale for the 15 hours of service recommended by Dr. Canino, particularly in view of the subsequent letters. The "agency must examine the relevant data and articulate a satisfactory explanation for its action including a `rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'nv. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42 (1983) (quotingBurlington Truck Lines. Inc. v. United States, 371 U.S. 156, 168 (1962)). This Court thus remands this case to the agency for consideration of the requisite number of hours warranted by the evidence before it.
 EQUAL ACCESS TO JUSTICE
Plaintiffs also request that the Court award costs and reasonable litigation expenses pursuant to the State Equal Access to Justice Act (EAJA). R.I. Gen. Laws § 42-92-1, et seq. EAJA "was propounded to mitigate the burden placed upon individuals and small businesses by the arbitrary and capricious decisions of administrative agencies made during adjudicatory proceedings." Taft v. Pare, 536 A.2d 888, 892 (R.I. 1988). Under the EAJA, the plaintiff would be able to recover reasonable attorney's fees if he is deemed the prevailing party. See Krikorian v.Rhode Island Department of Human Services, 606 A.2d 671 (R.I. 1992). As this matter is remanded for further consideration in accordance with this Court's ruling, Plaintiffs' request for attorney's fees is hereby reserved pending a final resolution of this case.
 CONCLUSION
After a thorough review of the entire record, this Court remands this matter to the agency for a determination of, and findings of fact with respect to, the number of hours required by Madeleine. This Court will retain jurisdiction.
[1] The Rhode Island Supreme Court has similarly defined "legally competent evidence." Arnold v. Rhode Island Dept. of Labor TrainingBd. of Review, 822 A.2d 164, 167 (R.I. 2003)(defining legally competent evidence as "`relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance'") (quoting Rhode Island Temps.Inc. v. Department of Labor Training Bd. of Review, 749 A.2d 1121, 1125 (R.I. 2000)).
[2] Although the LaPlante Center recommended 40 hours, they are a service provider and do not have experience with Williams Syndrome children.
[3] Madeleine was receiving speech, occupational, physical and music therapy at the time, and is now eligible for a full day language based program in the school system.